Diedre **WILLIAMS**, Plaintiff,

v.

**VAN BUREN TOWNSHIP, an unincorporated subdivision of the State of Michigan, Philip Wakeford, Mark Buckberry, Gregory M. Lorain, Individually and in their capacity as police officers in the Van Buren Township Police Department, jointly and severally, Defendants.**

**Civil Action No. 95–40255.**

United States District Court,
E.D. Michigan,
Southern Division.

May 10, 1996.

---

Gregory J. Stempien, Stempien & Stempien, Livonia, MI, for Plaintiff.

Michael J. Watza, Cummings, McClorey, Davis & Acho, P.C., Livonia, MI, for Gregory M. Laurain.

### MEMORANDUM AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSING STATE CLAIMS

GADOLA, District Judge.

Plaintiff filed this action alleging that she was wrongly detained at the Van Buren Township Police Station for twenty hours after she had shot her husband in a domestic dispute. She brings claims under 42 U.S.C. § 1983 and state law. Both sides have moved for summary judgment. Oral argument was heard on May 8, 1996. For the following reasons, this court will deny both motions.

### I. Factual Background

At about 1:00 a.m. on Saturday, April 1, 1995, plaintiff shot her husband, David, in the shoulder, at their home following a domestic

dispute. Plaintiff then drove her husband to the hospital where he received treatment for his gunshot wound.

Officer Wakeford interviewed both plaintiff and her husband at the hospital. Mr. Williams reported that plaintiff had grabbed him by the throat while holding a handgun. Mr. Williams reported that the gun discharged when plaintiff's son physically interposed himself between plaintiff and Mr. Williams.

Plaintiff reported that when Mr. Williams arrived at their home that night, he threatened to kill plaintiff. Plaintiff claims that Mr. Williams, while choking plaintiff, reached in to a closet and retrieved a gun.[1] After an intense struggle for the gun, plaintiff grabbed it from her husband and it discharged.

After receiving Mr. Williams's consent, Detectives Buckberry and Lorain entered the Williams' home. They retrieved a gun from the floor of a closet. They also interviewed plaintiff's children. Plaintiff's daughter, Jessica, reported that after her father had been hitting plaintiff, plaintiff managed to get her gun, which was then grabbed by her father and pointed at plaintiff. Jessica reported that the gun discharged during the struggle between her parents for control of the gun.

At 3:30 a.m. plaintiff was arrested for domestic assault, a misdemeanor. Plaintiff was taken to the Van Buren Township police station where she was booked and placed in jail. She remained in jail until about 11:00 p.m., Saturday, April 1, 1995, when she was released. The prosecutor later decided not to press charges against plaintiff. Charges were filed, however, against Mr. Williams.

## II. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact

would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984) (citation omitted). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.,* 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 861 (6th Cir.1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg,* 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted). *See Catrett,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The evidence itself need

---

1. Mr. Williams, apparently, was also carrying another gun on his person during this fight.

not be the sort admissible at trial. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

## III. Analysis

### A. Plaintiff's 42 U.S.C. § 1983 Claim

Plaintiff alleges that her detention clearly violated the Fourth Amendment to the United States Constitution.[2] Defendants argue that the officers involved are entitled to qualified immunity and that the Township may not be held liable because no policy or custom has been demonstrated. These will be addressed in turn.

### 1. Qualified Immunity of Officers

■ There are two parts to a qualified immunity analysis: (1) determining whether plaintiff has demonstrated the violation of a constitutionally protected right, and (2) if so, determining whether the right was clearly established at the time of the violation, so that any reasonable officials would know that they were violating that right. *Brennan v. Northville*, 78 F.3d 1152, 1154 (6th Cir.1996); *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

The Fourth Amendment provides, in pertinent part, "The right of the people to be secure in their persons ... against unreasonable ... seizures, shall not be violated...." The Fourth Amendment has been interpreted to require states "to provide prompt determination of probable cause [to arrest]" whenever a suspect is arrested without a warrant. *County of Riverside v. McLaughlin*, 500 U.S. 44, 53, 111 S.Ct. 1661, 1668, 114 L.Ed.2d 49 (1991). The *McLaughlin* Court held:

> [J]udicial determinations of probable cause within 48 hours of arrest will, as a general

matter, comply with the promptness requirement....

This is not to say that the probable cause determination in a particular case passes constitutional muster simply because it is provided within 48 hours. Such a hearing may nonetheless violate *Gerstein* if the arrested individual can prove that his or her probable cause determination was delayed unreasonably. Examples of unreasonable delay are delays for the purposes of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake.

*Id.* at 56, 111 S.Ct. at 1669.

■ Thus, there is a constitutional right to have a prompt determination of probable cause following a warrantless arrest. The issue remains whether either side is entitled to summary judgment on the issue of whether this right was violated. The law in this circuit is clear that if plaintiff was detained for 20 hours because she could not be brought before a magistrate earlier than that, then her rights have not been violated. *Brennan*, 78 F.3d at 1156 ("[T]here ordinarily should not be a finding of unconstitutionality when a defendant is detained for the legitimate purpose of obtaining an arraignment, if a magistrate is not immediately available.") Further, if the detaining officers know that a magistrate is not available, they need not make an effort to contact a magistrate, until such time as one would be available. *Id.* On the other hand, if a magistrate was available during the day of Saturday, April 1, 1995, and the officers made no effort to arrange a probable cause determination, but rather were delaying to gather more evidence against plaintiff or simply for delay's sake—to "cool down" the situation, then the delay would be unreasonable, and violative of the Fourth Amendment.[3] *McLaughlin*, 500 U.S. at 56, 111 S.Ct. at 1669.

---

**2.** It is not clear whether plaintiff also alleges that her initial arrest violated the Fourth Amendment. Viewing the facts in plaintiff's favor, however, this court is convinced that plaintiff's arrest for domestic abuse was proper, as a matter of law, because there was probable cause to believe that plaintiff committed the crime charged. See *Pyles v. Raisor*, 60 F.3d 1211, (6th Cir.1995).

**3.** Defendant asserts that the officers are necessarily entitled to qualified immunity because they were following state law. Even assuming that state law was followed, that does not preclude a finding that an officer acting pursuant to that state law violated a clearly established federal constitutional right. State law is irrelevant to the issue of whether the delay was reasonable, for purposes of the Fourth Amendment.

According to the interrogatories and affidavits completed by defendants, plaintiff was held because the officers (1) were awaiting arraignment, (2) were conducting further investigation, and (3) wanted the situation to "cool down" between plaintiff and her husband. While the latter two reasons are improper under *McLaughlin*, the first reason is proper. There is absolutely no evidence before this court concerning whether a magistrate, through special arrangement, could have been made available for arraignments on Saturday, April 1, 1995 in Van Buren Township. Plaintiff argues that the defendants have admitted that they delayed only for delay's sake and to conduct further investigation, but she ignores that defendants also state that plaintiff was detained to await arraignment. Accordingly, plaintiff is not entitled to summary judgment on the issue of qualified immunity because there is a question of fact concerning whether plaintiff was held even though a magistrate was available. Perhaps through further discovery she will be able to adduce conclusive evidence that there was a magistrate available, or that a magistrate could have been made available, and that the delay was therefore unreasonable. At the present time, however, viewing the evidence in the light most favorable to defendants, this court is not convinced that the delay was unreasonable under *McLaughlin*.

Defendants argue that the delay was reasonable as a matter of law because the delay was less than 48 hours. *McLaughlin* does not hold that every delay that is less than 48 hours is constitutional. As previously discussed, any delay beyond that reasonably necessary to arrange a probable cause determination is unconstitutional. If plaintiff can provide evidence that a magistrate was available on Saturday morning, for instance, detaining plaintiff until 11:00 p.m. would be unconstitutional. If, at the close of discovery, plaintiff is unable to adduce any evidence that a magistrate was available, then defendants may be entitled to summary judgment.

Even though this court cannot conclude as a matter of law that defendants did not violate plaintiff's constitutional rights, defendants would still be entitled to summary judgment on the issue of qualified immunity if this court concluded that the constitutional right to have a probable cause determination as soon as a magistrate is available was not clearly established at the time of the alleged violation in this case. The alleged violation took place on April 1, 1995. *McLaughlin* was decided in 1991. *McLaughlin* clearly holds that a probable cause hearing must be held as soon as possible after a magistrate can be made available and the suspect is processed. If the defendants in this case detained plaintiff for the purposes of further investigating the incident or to "cool down" the situation, when a magistrate was available or could be made available to hold a probable cause hearing as part of an arraignment, then the officers violated her clearly established rights under *McLaughlin*. Thus, they would not be entitled to qualified immunity. Accordingly, this court cannot grant defendants' summary judgment motion at this time with respect to qualified immunity.

## 2. Custom or Policy of Van Buren Township

*Monell v. New York Dep't of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), established that a municipality[4] may be liable as a "person" under § 1983. Such liability is restricted, however. "A municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691, 98 S.Ct. at 2036. Rather, liability is incurred only if "action pursuant to official municipal policy of some nature caused a constitutional tort." *Pembaur v. Cincinnati*, 475 U.S. 469, 477, 106 S.Ct. 1292, 1297, 89 L.Ed.2d 452 (1986) (quoting *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036); *Alioto v. City of Shively*, 835 F.2d 1173, 1175 (6th Cir.1987). The requirement of an official policy distinguishes the acts of the employee

4. While *Monell* was a suit against New York City, through its Department of Social Services, its holding controls the liability of all "local government units" under § 1983. *Marchese v. Lucas*, 758 F.2d 181, 186 (6th Cir.1985).

from those of the municipality, ensuring that the municipality is held responsible only for the latter. *Pembaur*, 475 U.S. at 479–80, 106 S.Ct. at 1298–99.

 A policy need not be an official order from the municipality's legislative body or agencies in order to justify liability under § 1983. The single decision of an individual with final authority to establish policy can be sufficient to justify local governmental liability. *Id.* at 480, 106 S.Ct. at 1298. Additionally, liability may be founded upon a custom of the municipality, even if not officially approved, or a policy of inadequate training or supervision. *Id.* at 481–82 n. 10, 106 S.Ct. at 1299–1300 n. 10; *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

 Defendants state that plaintiff has failed to plead a custom or policy or adduce any evidence of an improper custom or policy. This court agrees with the former proposition. The complaint is entirely devoid of any allegation that any officers acted pursuant to a policy or custom of the Township of Van Buren when they confined plaintiff for 20 hours. Nonetheless, there is some evidence that it may be the Township's policy to keep suspects of domestic abuse locked up for 20 hours, regardless of whether a magistrate is available. The following is an excerpt from defendants' interrogatories:

> 10. Is it Van Buren Township Police Department's policy to place domestic assault alleged violators in jail for a period of time prior to seeking arraignment?
> Yes.
> a. If so, what is the period of time that alleged domestic assault violators must stay incarcerated prior to having an arraignment?
> Up to 20 hrs.

The police report on this matter states that the "suspect was fingerprinted, photographed, and lodged for 20 hrs under the domestic violence laws." Both of these statements leave open the possibility that it was the policy of the Township to lodge suspects for 20 hours under the domestic violence laws, regardless of the potential availability of a magistrate. Further, there is no men-

tion in the police reports of attempts to locate a magistrate.

Because this court believes that further discovery may allow plaintiff to demonstrate that the officers confined plaintiff pursuant to a policy or custom of Van Buren Township, i.e., that domestic violence suspects be confined for 20 hours regardless of the potential availability of a magistrate, this court will grant plaintiff leave to amend her complaint to allege such a policy. If the complaint is not amended within 10 days of this order, however, then defendants' motion for summary judgment will be granted with respect to defendant Van Buren Township.

## B. Plaintiff's Claim of Violations of State Constitutional and Statutory Law

It is difficult to determine if plaintiff is attempting to bring any claims directly under the Michigan Constitution or M.C.L. § 764.15 and M.C.L. § 780.581. The complaint's only statement on the subject is as follows: "The unlawful confinement of Plaintiff deprived her of her civil and constitutional rights secured by the Michigan Constitution and United States Constitution, Federal statute being 42 U.S.C. Sec. 1983 and State statutes being M.C.L. 764.15 and M.C.L. 780.581." Plaintiff (perhaps deliberately) did not make clear her theories of recovery under the state constitution or statutes.

### 1. Recovery Under 42 U.S.C. § 1983

 Obviously, 42 U.S.C. § 1983 does not provide a cause of action against a state official for a violation of state law. *See, e.g., Harrill v. Blount County, Tenn.*, 55 F.3d 1123 (6th Cir.1995). Thus, to the extent that plaintiff is relying on § 1983 to provide a remedy for violations of state statutory or constitutional law, her claims are dismissed.

### 2. Recovery Under Michigan Constitution and State Statutes

 Upon further review of this case and the arguments of the parties, both written and oral, this court believes that the exercise of pendent jurisdiction over plaintiff's murky state law claims was improvidently granted.

At this time, this court declines to exercise pendent jurisdiction over plaintiff's state law claims.

It is clear to this court that a decision of plaintiff's state law claims would require interpretation of various Michigan statutes with little precedent from the Michigan courts to serve as guidance. First, this court would have to determine whether the statutes and constitutional provisions relied upon by plaintiff permit a damages remedy for their violation. This is a question best left to the Michigan Legislature, or at least the Michigan courts. Second, this court would need to decide whether the defendants acted within the scope of M.C.L. § 780.581(3), or reasonably believed that they were acting within the scope of M.C.L. § 780.581(3) when they detained plaintiff. This would require this court to determine when it is "otherwise unsafe" to release a detainee, within the meaning of § 780.581(3). This question is one that should be answered by the courts of the State of Michigan.

In short, this court believes that novel and complex issues of state law are raised by plaintiff's state law claims. Fundamental concepts of federalism and respect for the courts of the State of Michigan dictate that Michigan state courts be allowed to address these issues. It is the courts of the State of Michigan that are the experts in these matters.

This court has discretion to exercise its pendent jurisdiction. 28 U.S.C. § 1367(c); *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In exercising its discretion, the court must look to "considerations of judicial economy, convenience and fairness to the litigants" and avoid needless decisions of state law. *Id.* at 726, 86 S.Ct. at 1139; *see also* 13B C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3567.1 (2d ed. 1984).

Recent litigation in the federal courts involving federal law claims together with pendent state law claims has caused procedural and substantive problems. Although the federal and state claims in this action arise out of the same factual situation, litigating these claims together may not serve judicial economy or trial convenience.

Because federal and state law each have a different focus, and because the two bodies of law have evolved at different times and in different legislative and judicial systems, in almost every case with pendent state claims, the courts and counsel are unduly preoccupied with substantive and procedural problems in reconciling the two bodies of law and providing a fair and meaningful proceeding.

The attempt to reconcile these two distinct bodies of law often dominates and prolongs a pre-trial practice, complicates the trial, makes the jury instructions longer, confuses the jury, results in inconsistent verdicts, and causes post-trial problems with respect to judgment interest and attorney fees. Thus, it appears that in many cases the apparent judicial economy and convenience of the parties' interest in the entertainment of pendent state claims may be offset by the problems they create.

Accordingly, this court will dismiss plaintiff's state law claims without prejudice. Plaintiff is directed to Mich.Comp.Laws Ann. § 600.5856, regarding the tolling of the state statute of limitations. *See also Lee v. Grand Rapids Bd. of Educ.,* 148 Mich.App. 364, 384 N.W.2d 165 (1986); *Shrader, Inc. v. Ecclestone Co.,* 22 Mich.App. 213, 177 N.W.2d 241 (1970).

### *ORDER*

Therefore, it is hereby **ORDERED** that plaintiff's motion for summary judgment be **DENIED.**

It is hereby further **ORDERED** that defendants' motion for summary judgment be **DENIED.**

It is hereby further **ORDERED** that plaintiff's state law claims be **DISMISSED** without prejudice.

**SO ORDERED.**