**Robert P. BRENNAN, Plaintiff–Appellee,**

v.

**TOWNSHIP OF NORTHVILLE,
Defendant,**

**Lawrence Demeter and Fred Yankee, individually and in their official capacities, Defendants–Appellants.**

No. 95–1012.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 20, 1995.

Decided March 26, 1996.

---

Gregory J. Stempien (argued and briefed), Livonia, MI, for Plaintiff-Appellee.

G. Gus Morris (argued and briefed), Dise & Gurewitz, Detroit, MI, for Defendants-Appellants.

Before KRUPANSKY, BATCHELDER and MOORE, Circuit Judges.

MOORE, Circuit Judge.

Lawrence Demeter and Fred Yankee appeal the denial of qualified immunity in this action premised on 42 U.S.C. § 1983. Police officers Demeter and Yankee arrested Robert Brennan and held him overnight on charges of domestic assault, without giving him the opportunity to post bail at the police station. In doing so, the officers attempted to follow the requirements imposed by Mich. Comp. Laws § 780.582a, which provides specially for the detention of domestic violence offenders. The district court, however, found that the officers' actions violated the Fourth Amendment and denied qualified immunity to defendants. Because the district court's conclusions were founded on an erroneous factual assumption, we reverse.

## I

In March 1993, in the late afternoon, a domestic dispute arose between Robert Brennan and his wife. Patrolman Lawrence Demeter responded to a 911 call by Brennan's stepdaughter Carli, and when he arrived, the dispute appeared to have calmed down considerably. There are slight differences in the stories of the family members: Carli claimed Brennan tried to "choke" her; Brennan claimed he merely "grabbed" her away from the phone by the neck. Brennan's wife stated that he "pushed" her across the kitchen; Brennan stated that he merely "shook her off" and she fell. These differences are immaterial. Brennan does not dispute the existence of probable cause for Demeter to have arrested him for domestic assault and for assault and battery. Indeed, he later pleaded nolo contendere to the same charges.

Brennan's grievance lies rather with his detention for 22 hours without any opportunity for immediate release on an interim bond. He was booked at the police station at about 6:00 p.m., at which point defendant Demeter called Detective Fred Yankee for further instructions. Because the courthouse was closed, Yankee advised Demeter to hold Brennan for 20 hours, pursuant to the 1990 Michigan interim bond statute, Mich. Comp. Laws § 780.582a, Mich. Stat. Ann. § 28.872(2a), and a letter from the Wayne County prosecutor, John O'Hair, notifying the police department of this provision. M.C.L. § 780.582a provides that if a person is arrested for domestic assault:

... [he or she] shall not be released on an interim bond ... but shall be held until he or she can be brought before a magistrate for arraignment ... or, if a magistrate is not available or immediate trial cannot be held within 24 hours, the person shall be held for 20 hours, after which the person

may be released on an interim bond . . . or on his or her own recognizance. . . .

O'Hair's letter informing the police of this new provision (which became effective March 28, 1991) states:

> Recent amendments to the interim bond statute mandate that a domestic violence offender may not be released on any type of bond or personal recognizance unless arraignment or trial may be had within 24 hours. If an arraignment cannot be scheduled within 24 hours, the offender is to be held for 20 hours; and may, thereafter, post bond or be released on his own recognizance.

The morning after Brennan's arrest, Detective Yankee obtained the criminal complaint against Brennan, and Brennan was arraigned shortly after the court's lunch break, at around 2:45 p.m. When Brennan was finally released on his own recognizance, it was almost 4:00 p.m., 22 hours after he had been arrested.

Brennan named Demeter, Yankee, and the Township of Northville as defendants in his § 1983 action, arguing that his overnight detention was clearly unconstitutional. When all three defendants moved for summary judgment, claiming either qualified immunity or the failure to show an unconstitutional policy or custom, Brennan responded with a summary judgment motion of his own. There being no material factual dispute, the district court ruled as a matter of law that Brennan's Fourth Amendment rights had been violated, that such rights were clearly established, and that the police officers' detention of Brennan was conducted pursuant to an unconstitutional policy of the township police department. Defendants' motion for summary judgment was denied, and plaintiff's motion was granted on the issue of liability under § 1983.[1] We address first the denial of qualified immunity to defendants. We then discuss the partial summary judgment for Brennan in part IV below.

## II

■ A denial of summary judgment on qualified immunity grounds may be reviewed on interlocutory appeal under *Mitchell v. Forsyth*, 472 U.S. 511, 524–30, 105 S.Ct. 2806, 2814–18, 86 L.Ed.2d 411 (1985), and the decision is reviewed de novo. *Washington v. Newsom*, 977 F.2d 991, 993 (6th Cir.1992), *cert. denied*, 507 U.S. 1031, 113 S.Ct. 1848, 123 L.Ed.2d 472 (1993). When analyzing a qualified immunity issue, the first step is to determine whether plaintiff has shown a violation of a constitutionally protected right. *Megenity v. Stenger*, 27 F.3d 1120, 1124 (6th Cir.1994). If the answer is yes, then the second step is to determine whether the right is so "clearly established" that a "reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *see also Megenity*, 27 F.3d at 1124. Our initial inquiry, then, is directed toward whether Brennan's detention from 6:00 p.m. to the following afternoon violated the Fourth Amendment. Because we answer this question in the negative, it will be unnecessary to proceed to the second step.

■ In *County of Riverside v. McLaughlin*, 500 U.S. 44, 47, 111 S.Ct. 1661, 1665, 114 L.Ed.2d 49 (1991), the Supreme Court clarified the standard set down earlier in *Gerstein v. Pugh*, 420 U.S. 103, 125, 95 S.Ct. 854, 868–69, 43 L.Ed.2d 54 (1975), regarding what constitutes a "prompt" judicial determination of probable cause, required by the Fourth Amendment, for purposes of holding a pretrial detainee who has been arrested without a warrant. *Gerstein* had held that suspects arrested without a warrant could not be held pending trial for indefinite periods of time—sometimes for a month or more—without any judicial determination of probable cause. The *Riverside* Court found that the "flexible" approach of *Gerstein* should be retained, but that more concrete guidelines would be necessary to guide lower courts in determining whether a police department's procedures complied with the Constitution. *Riverside*,

---

**1.** Brennan had also appended various state law claims, which the district court treated as abandoned. Because these claims are not subject to interlocutory review, we express no opinion as to the district court's disposition of them.

500 U.S. at 55–56, 111 S.Ct. at 1669–70. The Court observed that "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein.*" *Id.* at 56, 111 S.Ct. at 1670. It then stated that if a probable cause hearing does occur within this 48–hour period, the burden will be on the plaintiff to show that there was an "unreasonable delay":

> Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake.

*Id.* If an arrestee is not afforded a hearing in 48 hours, on the other hand, the Court noted that the burden would shift to the government "to demonstrate the existence of a bona fide emergency or other extraordinary circumstance." *Id.* at 57, 111 S.Ct. at 1670. The Court explicitly rejected the dissent's suggestion that 24 hours would be "a more appropriate outer boundary" for providing probable cause hearings. *Id.* at 57–58, 111 S.Ct. at 1670–71.

The district court attempted to apply this framework to the 22–hour detention of Brennan, finding that although he was arraigned within 48 hours, the police had delayed "for delay's sake"—thus bringing this case into one of *Riverside*'s forbidden categories of unreasonable delay. The basis for the court's ruling was the court's belief that "Yankee admitted that magistrates are always available somewhere in Wayne County for emergency arraignments, twenty-four hours a day, seven days a week." Memorandum and Order, No. 93–74561, at 3 (E.D.Mich. Dec. 15, 1994). Therefore, according to the district court, defendant police officers should have taken Brennan to be arraigned right away and should not have held him overnight. The court went on to state that even if a magistrate had not been available on that specific evening, "[t]he Court need not decide whether or not a magistrate was available during the evening of the detainment because it is clear from the record that regardless of the availability of a magistrate, Brennan would still have been

detained for the twenty hour period." Memorandum and Order at 10–11.

In reality, there is nothing in the record to support the idea that a magistrate was available for arraignments in Northville in the evenings. Everything in the record supports the idea that the police officers knew that a magistrate was *not* available then, and that is why they did not attempt to have Brennan arraigned until the next day. Yankee testified at his deposition that an emergency magistrate was available in the evenings for the purpose of obtaining search warrants only. He specifically stated that a magistrate would not be available to do arraignments. Demeter similarly testified that he knew a magistrate would not be available "[b]ecause the court closes at 4:15." Demeter Dep. at 17. Yet, for some reason, the district court and Brennan both seize upon the idea that a magistrate was "available" for warrants and then equate it with "availability" for all purposes, including arraignments. Brennan, for example, relies exclusively on the following language from Yankee's deposition to show that a magistrate was available for arraignments:

> Q. What about at night, Officer, is there any procedure by which a magistrate can be contacted in the evening during the week?
>
> A. No.
>
> Q. That's not possible in the County of Wayne?
>
> A. No. The only time a magistrate—we would contact one would be to secure a search warrant.
>
> Q. And if you needed a search warrant at 2 o'clock in the morning, could you find a magistrate?
>
> A. Yes.
>
> Q. So magistrates are available; isn't that correct?
>
> A. Yeah, for a search warrant, but not for arraignment.

Yankee Dep. at 9–10. The foregoing testimony says the opposite of what Brennan seems to think it says. It does not establish that a magistrate was available for emergency arraignments. Yankee clearly stated that they were not available for this purpose.

The possibility that a nighttime arraignment system might have been in operation is further diminished by Yankee's earlier testimony that the only time emergency arraignments could be arranged was on weekends, "[o]n Saturday and Sunday at 12 noon" in the "out-county office." Yankee Dep. at 9.

Because conducting an arraignment and issuing a warrant are completely different things, Brennan has failed not only to show that a magistrate was available to arraign him on the night of his arrest, he has failed also to show the existence of even a genuine issue of material fact on this point. Brennan relies, and the district court relied, *entirely* on his unreasonable interpretation of the deposition testimony by defendants Yankee and Demeter. Neither testimony reveals a basis for the idea that the police officers delayed beyond what was necessary to ensure a prompt appearance before a magistrate. The district court found that the officers delayed "for delay's sake" because they admitted they did not even *try* to locate a magistrate, but the court overlooked the fact that both officers stated that they knew trying to locate one would be fruitless. Demeter Dep. at 17; Yankee Dep. at 10. It is also significant that Brennan alleges nowhere in his original complaint that a magistrate was available that night. Only after the defendants' depositions did Brennan suddenly present, in his motion for summary judgment, the idea that magistrates were available for arraignments, but he pointed to no evidence apart from these depositions. In other words, it is more than apparent that the officers' testimony constitutes Brennan's sole pillar of support. The law is settled that a party opposing a proper summary judgment motion "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Unless a reasonable person could possibly be swayed by Brennan's interpretation of the police officers' statements, Brennan has not met his burden of showing, at a very minimum, a genuine issue of material fact.

In short, the district court made an erroneous factual assumption in denying summary judgment to defendants. The standard of review to apply to such factual findings is the same as that on summary judgment in general—de novo. *See Morrison v. Char,* 797 F.2d 752, 755 (9th Cir.1986); *New York Life Ins. Co. v. Baum,* 707 F.2d 870, 871 (5th Cir.1983); 1 Steven A. Childress & Martha S. Davis, *Federal Standards of Review* § 5.02, at 5–11 (1992) ("[T]he court of appeals does not defer to any factual assumptions the district court has apparently made. The Rule 52(a) standard of *clearly erroneous* does not apply to a summary judgment ruling."). Once we determine that a magistrate was *not* immediately available for arraignments, based on uncontroverted testimony presented with the motion for summary judgment, the entire foundation for the district court's decision is undone. *Riverside* explicitly instructs that there ordinarily should not be a finding of unconstitutionality when a defendant is detained for the legitimate purpose of obtaining an arraignment, if a magistrate is not immediately available:

> In evaluating whether the delay in a particular case is unreasonable, however, courts must allow a substantial degree of flexibility. Courts cannot ignore the often unavoidable delays in transporting arrested persons from one facility to another, *handling late-night bookings where no magistrate is readily available,* obtaining the presence of an arresting officer who may be busy processing other suspects or securing the premises of an arrest, and other practical realities.

500 U.S. at 56–57, 111 S.Ct. at 1670 (emphasis added). Under these circumstances, there was no "delay for delay's sake." There was delay simply for the purpose of getting an arraignment. The police officers held Brennan only as long as was necessary to await the opening of the courthouse the following morning, to obtain a complaint from the prosecutor's office, and to bring him before a magistrate. On these facts, Brennan certainly cannot argue that the refusal to grant immediate release on interim bond was a deprivation of any constitutional right. Without a showing of a constitutional violation, the denial of qualified immunity to defendants Yankee and Demeter must be reversed.

## III

In denying defendants' motion for summary judgment, the district court was apparently influenced by a reading of M.C.L. § 780.582a that was advanced not by Brennan, but by defendants' lawyer at the motion for summary judgment. Simply put, defense counsel argued that M.C.L. § 780.582a authorized the police department to detain arrestees for 20 hours regardless of whether a magistrate was available for immediate arraignment. The district court found defense counsel's interpretation of the statute to be unconstitutional and found that Yankee's and Demeter's actions were based on this unconstitutional interpretation. As we have already decided that the officers' actions did not violate the Fourth Amendment because no magistrate was available for immediate arraignment, we need not pass upon the correct interpretation of the statute, much less the constitutionality of this interpretation or of any policy of the Northville police. The district court decided a constitutional issue that was not properly before it: even if defense counsel's assertions regarding the statute might have operated as an admission of Northville's policy, and even if the police officers admitted that they believed this was indeed the policy, the officers clearly did not act upon it. They did not disregard the availability of a magistrate; they did not hold Brennan while he could have been arraigned. The officers both stated explicitly that the reason they did not attempt to arraign Brennan on the evening of his arrest was that a magistrate was not immediately available. The following morning, the officers stated that they held Brennan only as long as was necessary to obtain a criminal complaint against him and have him arraigned. The uncontroverted testimony shows no constitutional violation. Brennan cannot now challenge a policy that was not used in any way against him.

The Michigan courts have not published any decisions construing M.C.L. § 780.582a, and so it is especially premature for us to address the interpretive and constitutional questions surrounding this statute. Because the defendant officers' actions did not necessarily implicate the full reach of M.C.L.

§ 780.582a, it is appropriate to focus only on the officers' actions. To the extent that the officers were prompted by the statute, we hold that defendants Yankee and Demeter did not violate, in this instance, any constitutional right held by Brennan.

## IV

 Ordinarily, our review in this case would be limited to reversing the district court's denial of qualified immunity for defendants Yankee and Demeter. As noted earlier, this court has jurisdiction over a denial of summary judgment to defendants on qualified immunity grounds under *Mitchell v. Forsyth,* 472 U.S. 511, 524–30, 105 S.Ct. 2806, 2814–18, 86 L.Ed.2d 411 (1985). We would not normally have jurisdiction over the rest of the case—the summary judgment in favor of Brennan—because a partial summary judgment on the issue of liability alone is not a "final decision" under 28 U.S.C. § 1291. *See Williams v. Com. of Kentucky,* 24 F.3d 1526, 1542 (6th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 358, 130 L.Ed.2d 312 (1994). This case presents a special situation, however, in which the issues of liability and qualified immunity are so related to each other that we can dispose of them together under the doctrine of pendent appellate jurisdiction. We do so, reversing plaintiff's summary judgment against the two police officers.

Our discretionary exercise of pendent appellate jurisdiction in this case is consistent with that of other courts of appeals, which have interpreted dictum in *Swint v. Chambers County Comm'n,* —— U.S. ——, ——, 115 S.Ct. 1203, 1212, 131 L.Ed.2d 60 (1995), as allowing pendent appellate jurisdiction where the appealable and non-appealable issues are "inextricably intertwined." *See Dolihite v. Maughon,* 74 F.3d 1027, 1035 n. 3 (11th Cir.1996); *Kincade v. City of Blue Springs,* 64 F.3d 389, 394–95 (8th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1565, —— L.Ed.2d —— (1996); *Moore v. Wynnewood,* 57 F.3d 924, 928–31 (10th Cir.1995); *Kaluczky v. City of White Plains,* 57 F.3d 202, 207 (2d Cir.1995). *Moore* is especially instructive. In a carefully reasoned opinion,

the Tenth Circuit determined that because the plaintiff had failed to show a constitutional violation in his § 1983 action, not only should the police officer defendant prevail on qualified immunity grounds, but also the city defendant should prevail on its normally unappealable interlocutory claim. *Moore*, 57 F.3d at 927, 929–30. The two claims were "inextricably intertwined" because the finding of nonexistence of a constitutional claim for immunity purposes necessarily decided the whole case not only in favor of the officer, but also in favor of the city as well. As stated in the opinion:

> As we read *Swint*, a pendent appellate claim can be regarded as inextricably intertwined with a properly reviewable claim on collateral appeal only if the pendent claim is coterminous with, or subsumed in, the claim before the court on interlocutory appeal—that is, when the appellate resolution of the collateral appeal *necessarily* resolves the pendent claim as well. Here, we conclude that the two appeals are coterminous because Moore's federal and state law claims against the City—to the extent the state law claim references the alleged constitutional violation—are both premised on his claim that Defendants violated his First Amendment rights *and* because we hold that no such First Amendment violation occurred.

The situation in *Moore* closely mirrors our own. In the instant case, our reversal of the district court's qualified immunity determination on the ground that Brennan has not alleged a constitutional violation is indisputably "coterminous with, or subsumed in" the second issue: whether Brennan is entitled to summary judgment on the *basis* of a constitutional violation. Our finding on the first issue necessarily and unavoidably decides the second. Because we find that Brennan's rights were not violated for immunity purposes, we must find that Brennan's rights were not violated for purposes of obtaining affirmative relief.

This circuit has previously declined to apply pendent appellate jurisdiction in different circumstances in its only published discussion of the doctrine. *See Williams v. Kentucky,* 24 F.3d 1526, 1542–43 (6th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 358, 130 L.Ed.2d 312 (1994). In *Williams,* however, the panel appropriately refused to employ pendent appellate jurisdiction because the opinion dealt only with the issue of whether plaintiff's constitutional claim was "clearly established." Therefore, as the court correctly observed, the "holding on qualified immunity ha[d] nothing to do with the merits" of the constitutional claim. *Id.* at 1542. The panel also noted that the doctrine was discretionary and that a refusal could be based on particular circumstances in the case. This case, on the other hand, presents a situation in which the holding on qualified immunity—that plaintiff has failed to raise a constitutional claim—has *everything* to do with the merits of the summary judgment in favor of plaintiff: without a constitutional claim, the judgment for Brennan simply cannot stand against Yankee and Demeter. As this appeal presents the quintessential case for application of pendent appellate jurisdiction, we exercise our discretion to do so in the interest of judicial economy. We reverse the partial summary judgment in favor of Brennan on the issue of liability, at least as it applies to the police officer defendants.

A distinct problem remains with respect to the township of Northville, however. Northville is not a party to this appeal, although the summary judgment for Brennan applies equally to it as a defendant. We note that if Northville had also attempted to appeal from the district court's judgment, this case would exactly duplicate the situation in *Moore.* But because Northville has not been made a party here (most likely in the belief that the absence of a final judgment precluded an interlocutory appeal), we will not extend pendent appellate jurisdiction to the judgment against it.

## V

We **REVERSE** the denial of qualified immunity to defendants Yankee and Demeter, we exercise pendent appellate jurisdiction to **REVERSE** the summary judgment in favor of Brennan as it applies to Yankee and Demeter, and we **REMAND** to the district court for proceedings consistent with this opinion.