**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0715n.06
Filed: August 17, 2005

No. 04-1772

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| BRIAN BULTEMA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | |
| | ) | |
| v. | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| BENZIE COUNTY, MARK KETZ, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| **Defendants-Appellants,** | ) | |
| | ) | |
| THOMAS C. ANDERSON, | ) | **O P I N I O N** |
| CRYSTAL MOUNTAIN | ) | |
| ENTERPRISES, INC., | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

Before:  RYAN, MOORE, and COOK, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.**  In this case, Defendants-Appellants, Benzie County (the "County") and Sheriff's Deputy Mark Ketz ("Ketz") (collectively, the "Appellants"), appeal the district court's denial of their motion for summary judgment.  Plaintiff-Appellee Brian Bultema ("Bultema") brought suit against the Appellants pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights arising out of his arrest by Ketz.  The district court held that summary judgment was inappropriate because there were genuine factual disputes regarding the Appellants' liability.  On appeal, the Appellants argue that even under the facts most favorable to Bultema, there was no violation of a clearly established constitutional right.  Upon review, we

conclude that when all the facts are viewed in the light most favorable to him, Bultema has demonstrated an objectively unreasonable violation of a clearly established constitutional right and therefore, Ketz's claim of qualified immunity must be denied. Furthermore, we are without jurisdiction to hear an interlocutory appeal from the denial of summary judgment in favor of the County, and we decline to exercise pendent appellate jurisdiction. Accordingly, we **AFFIRM** the district court's denial of Ketz's motion for summary judgment and **DISMISS** the County's interlocutory appeal.

## I. BACKGROUND

This case arises out of a dispute between Bultema and Thomas C. Anderson ("Anderson"), a security officer working at Crystal Mountain Resort (the "Resort"). Because of a closed-head injury suffered during the incident, Bultema does not recall the events of that evening. Nevertheless, given that we are reviewing the denial of a summary judgment motion, we must view the facts as relayed by the other witnesses as well as draw all reasonable inferences in the light most favorable to Bultema, the nonmoving party.

Bultema's family has owned a chalet at the Resort for more than thirty years. At the time of the incident, Sherard Stariha ("Stariha"), a family friend, was living in the chalet and working for the Resort on the ground-maintenance staff. Bultema, who lived in Muskegon, would visit the Resort and use the chalet periodically. On the evening of January 9, 2001, Stariha returned from work and went snowmobile riding with Bultema. The two rode for about thirty to forty-five minutes, but got separated from each other towards the end of the ride. Stariha stated in his deposition that after becoming separated from Bultema, he returned to the chalet to wait for Bultema.

2

After becoming separated from Stariha, Bultema rode his snowmobile to the snow maintenance building, presumably in search of Stariha. The snow maintenance building houses the Resort's maintenance equipment and was always unlocked and occupied. Anderson, a Resort security officer, was in the building awaiting some of his co-workers. Upon seeing Bultema, Anderson approached him and asked who he was and what he was doing in the building, to which Bultema did not respond. Anderson believed Bultema was intoxicated because of his movements and the smell of alcohol emanating from him. Stariha disputes this characterization of Bultema, and noted in his deposition that Bultema was on probation at the time and was tested for alcohol every day at the Benzie County Sheriff's Department. Anderson stated that after several more attempts to question Bultema about his presence in the building, Bultema responded "I know who you are. You're Tom Anderson. I've been here forever. I don't need to go." Joint Appendix ("J.A.") at 161 (Anderson Dep. at 51). Anderson explained that at that point, he told Bultema he had to go and attempted to escort him out of the building. According to Anderson, Bultema became very agitated with him and began yelling at him. Anderson then placed his hand on Bultema's shoulder and guided him out the door. Anderson has given conflicting statements as to the level of force used to escort Bultema out of the snow maintenance building. *Compare* J.A. at 162 (Anderson Dep. at 57) ("It was not a push. It was more a pleasantry like when you're done talking to somebody, give him a pat on the back, push situation, kind of thanks.") *with* J.A. at 221 (Bond Revocation Hr'g Tr. at 23) ("So, I opened the door for him and pushed him out the door."). As he walked out the door, Bultema fell down and accused Anderson of pushing him. According to Anderson, Bultema was yelling at him, accusing him of assault. At that point, Bultema got back on the snowmobile and rode away.

Back at the chalet, Stariha was watching television when Bultema arrived and recounted the incident with Anderson to him. Soon afterwards, Bultema went to bed, while Stariha fell asleep on the couch. Meanwhile, back at the snow maintenance building, Anderson called the Benzie County Sheriff's Department and asked to speak to a deputy about the incident. Shortly thereafter, Ketz, a Benzie County Sheriff's Deputy, arrived at the Resort. Anderson explained the situation to Ketz and stated he wanted to go talk to Bultema to tell him to stay out of the Resort's buildings at nighttime. Anderson did not know Bultema personally, but he did know that Bultema was Stariha's roommate. Anderson and Ketz then proceeded to the chalet. Ketz stated in his deposition that he did not intend to issue a citation or make an arrest, but rather simply to help Anderson have a conversation with Bultema.

Anderson and Ketz arrived at the chalet between 2:00 and 2:30 in the morning and parked their vehicles out of sight. There were no lights on in the chalet. Anderson and Ketz walked up onto the porch of the chalet and to the door. Stariha, who was asleep on the couch, woke up from the sound of pounding on the front door. The front door of the chalet had two doors hinged on the same side: a screen door which opened outward and a wooden door with a window that opened to the inside. Upon opening the wooden door, Stariha saw Anderson, who immediately stated "[w]here's your roommate?" J.A. at 123 (Stariha Dep. at 20). When Stariha asked why, Anderson responded with the same question. Stariha explained to Anderson that Bultema was sleeping, and again asked why Anderson wanted to see Bultema. At that point, Stariha walked closer to the screen door, which was still closed, and noticed Ketz for the first time, standing off towards the right of Anderson. When Anderson saw that Stariha noticed Ketz, Anderson stated "[t]his is Officer Ketz from Benzie County Sheriff. He's here to assist me." J.A. at 124 (Stariha Dep. at 22). Stariha again reiterated

4

that he wanted to know their purpose in coming to the property late at night, but Anderson simply instructed Stariha to get his roommate.

At this point, Bultema woke up and came out into the foyer and stated "Tom Anderson, what are you doing here? Get off my property." J.A. at 124 (Stariha Dep. at 23). As Bultema approached the door, Stariha placed himself between Bultema and Anderson, who was still on the other side of the screen door. Anderson explained in his deposition that while he was trying to instruct Bultema to stay out of the buildings at night, Bultema continued to yell at him to leave the chalet. Stariha stated that "Officer Ketz didn't say a thing. Well, at this point because Mr. Ketz was still in the position alongside the door, Mr. Bultema had no idea he was even present." J.A. at 124 (Stariha Dep. at 24). Bultema kept telling Anderson to leave the property and was pushing Stariha, who was still trying to stay between the two men, closer to the screen door. Stariha stated in his deposition that he believes that as Bultema got closer to Anderson, Bultema bumped Stariha into the screen door which opened outward and struck Anderson. J.A. at 125 (Stariha Dep. at 25). By contrast, Anderson and Ketz stated that Bultema opened the door and kicked Anderson in the knee. J.A. at 171 (Anderson Dep. at 90); J.A. at 235 (Ketz Dep. at 42). At that point, Ketz opened the screen door and shouted to Bultema that he was under arrest for assault but did not identify himself as a police officer. Stariha explained in his deposition that "basically [Bultema] didn't know the man was a policeman. He had never been identified. He thought Tom Anderson was here with one of his buddies to, you know, cause a little bit of trouble. So Ketz reached out to grab towards [Bultema] and [Bultema] dockered him; [Bultema] hit him." J.A. at 125 (Stariha Dep. at 26).

As Ketz fell back against the railing of the porch, both Anderson and Bultema reached for their respective sides of the screen door handle. Bultema's hand slipped and he fell backwards into

5

the chalet, at which point Anderson entered the chalet and jumped on him. The two crashed into a dining room table, but eventually Anderson was able to get a hold of Bultema and began forcing him back outside. After recovering from the hit to the head, Ketz entered the chalet as well and aided Anderson in forcing Bultema onto the porch. Anderson and Ketz slammed Bultema into the porch railing and attempted to handcuff him. After a protracted struggle, Ketz eventually was able to place handcuffs on Bultema. Stariha stated in his deposition that Bultema had "lost a little bit of his struggle" but continued to squirm even though he was in handcuffs, at which point Ketz sprayed pepper gas in Bultema's face. J.A. at 127 (Stariha Dep. at 34). Anderson and Ketz dispute this fact and state that Bultema was sprayed prior to being handcuffed. J.A. at 174 (Anderson Dep. at 103); 237-38 (Ketz Dep. at 52-53). Stariha stated in his deposition that even after the struggle finished, "[he] still ha[d] no idea why these people [were] on the property." J.A. at 127 (Stariha Dep. at 35).

At this point, Stariha picked up the phone and began calling an attorney. As he was making the call, he heard Bultema continue to yell obscenities at Anderson and Ketz. Stariha stated that "some of the very first words I heard out of Ketz was 'shut up' and then I heard a whack and a thud . . . [and] a vibration on the front of the house." J.A. at 128 (Stariha Dep. at 39). Stariha stated in his deposition that "I turned around and I saw Ketz recoiling. He had a zip glove on and he had just hit Mr. Bultema on the side of the head. Of course Mr. Bultema's head hit the side of the house, the metal door frame." J.A. at 128 (Stariha Dep. at 39). Stariha also stated that following the blow, he saw Bultema "kind of in a fetal position, but still on his knees with his forehead on the ground." J.A. at 129 (Stariha Dep. at 41). Ketz disputes the fact that he struck Bultema. J.A. at 238 (Ketz Dep. at 55). Bultema was taken away by another sheriff's deputy and transferred to the emergency room of Paul Oliver Hospital for treatment. He was later released to the Benzie County Sheriff's

6

Department for incarceration. Ultimately, the prosecutor voluntarily dropped all four criminal charges against Bultema.

On January 21, 2003, Bultema brought this suit pursuant to 42 U.S.C. § 1983 in the United States District Court for the Western District of Michigan against Ketz, Anderson, the County, and the Resort, alleging violations of his constitutional rights and various pendent state-law claims. Following discovery, Ketz and the County moved to dismiss the case or in the alternative for summary judgment. On May 12, 2004, the district court denied their motion, finding that there were genuine issues of material fact as to liability. Ketz and the County appeal from the district court's ruling.

## II. ANALYSIS

### A. Jurisdiction

Though Ketz raised the issue of qualified immunity in his motion for summary judgment, J.A. at 103 (Defs.' Mot. to Dismiss or, in the Alternative, Mot. for Summ. J. at 3), the district court did not specifically address the issue in its cursory opinion. The district court simply stated that the deposition testimony was "sufficient to create genuine issues of material fact as to liability." J.A. at 57 (Dist. Ct. Op. at 3). As the Supreme Court has noted, however, a government official's claim of qualified immunity is an assertion of a "right not to *stand trial* on the plaintiff's allegations." *Mitchell v. Forsyth*, 472 U.S. 511, 527 (1985). Therefore, by denying Ketz's motion for summary judgment, the district court implicitly found that Ketz was not entitled to qualified immunity.

"[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell*, 472 U.S. at 530. In such cases, "the

7

appealable issue is purely a legal one: whether the facts alleged (by the plaintiff, or, in some cases, the defendant) support a claim of violation of clearly established law." *Id.* at 528 n.9. By contrast, "a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones*, 515 U.S. 304, 319-20 (1995). Therefore, as we have stated, "[a] denial of qualified immunity on purely legal grounds is immediately appealable. A denial of qualified immunity that turns on evidentiary issues is not." *Turner v. Scott*, 119 F.3d 425, 427 (6th Cir. 1997) (internal citation omitted).

In this case, there are several factual disputes critical in determining liability which preclude Ketz's motion for summary judgment. Specifically, there are material factual disputes about what exactly occurred during the incident: whether Bultema ever kicked Anderson or Anderson instead was hit by the screen door, whether Ketz applied the pepper spray to Bultema after he was already handcuffed, and whether Ketz ever hit Bultema in the head. The district court also found that there was a genuine factual dispute about whether Ketz was even acting in his capacity as a sheriff's deputy or instead as a private security guard. To the extent that any part of Ketz's argument raises these factual issues, we are without jurisdiction to hear his interlocutory appeal.

In his brief to this court, Ketz does not raise these factual issues, however, but instead argues that even under Bultema's alleged facts, he is entitled to qualified immunity. *See* Appellants' Br. at 19 (noting that "even if Appellee's facts are accepted as true, his allegations fail to establish Constitutional violations"). Thus, the sole issue presented before us is a "neat abstract issue of law," *Turner*, 119 F.3d at 428, whether the facts as alleged by Bultema in this case demonstrate a violation of a clearly established constitutional right. Accordingly, we have jurisdiction pursuant to 28 U.S.C.

8

§ 1291 over Ketz's appeal of the district court's denial of summary judgment based on qualified immunity.

## B. Standard of Review

"Because review of a denial of qualified immunity claim is an issue of law, our review is *de novo*." *Yates v. City of Cleveland*, 941 F.2d 444, 446 (6th Cir. 1991). In reviewing a claim for qualified immunity, we employ a three-step inquiry:

> First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiff[] show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (internal quotation omitted). "Qualified immunity must be granted if the plaintiff cannot establish each of these elements." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005).

## C. Constitutional Violation

In his brief, Ketz argues that even accepting the version of the facts most favorable to Bultema, he has failed to demonstrate a constitutional violation. Upon review of the facts as alleged by Bultema, we disagree. We conclude that Ketz's actions of using pepper spray on Bultema and hitting him in the head after he was already handcuffed violated Bultema's Fourth Amendment right not to be unreasonably seized.

The Supreme Court has held that "*all* claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard."

9

*Graham v. Connor*, 490 U.S. 386, 395 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation omitted). A reviewing court "should pay particular attention to 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001) (quoting *Graham*, 490 U.S. at 396). In evaluating an excessive force claim, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Moreover, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

It is well established in this circuit that the gratuitous use of force on a suspect who has already been subdued and placed in handcuffs is unconstitutional. *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988). More specifically, we have held that use of a chemical spray on a suspect who is already handcuffed and no longer poses a threat to the safety of the officers or others constitutes excessive force. *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901 (6th Cir. 2004), *cert. denied*, 125 S. Ct. 1837 (2005). In *Champion*, the suspect was handcuffed on the ground, but continued to squirm and kick his feet in the air. Even after the officers attached a hobbling device to his ankles, they continued to use pepper spray on him. We stated that it was constitutionally

10

unreasonable for police officers to continue to spray a suspect, "who had stopped resisting arrest and posed no flight risk," and who "was immobilized by handcuffs and a hobbling device." *Id.*; *see also Greene v. Barber*, 310 F.3d 889, 898 (6th Cir. 2002) (holding that it may be excessive force to use pepper spray on suspect who was resisting arrest but "not threatening anyone's safety or attempting to evade arrest by flight"); *Vaughn v. City of Lebanon*, Nos. 99-6670, 99-6672, 99-6673, 99-6675, 99-6676, 2001 WL 966279, at *12-13 (6th Cir. Aug. 16, 2001) (holding that the use of a chemical spray may be unconstitutional when there is no immediate threat to the safety of the officers or others); *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994) (holding that the use of mace on a compliant suspect is constitutionally unreasonable).

Applying these principles to this case, we conclude that under the facts as recounted by Stariha, Ketz's use of pepper spray on Bultema after he was handcuffed constitutes excessive force. By all accounts, Bultema was resisting arrest and put up a significant fight against Anderson and Ketz. Stariha stated, however, that after Bultema was slammed against the porch railing, "you could tell that [Bultema] lost a little bit of his struggle, it took something out of him. And that is at the point when they got handcuffs on him." J.A. at 127 (Stariha Dep. at 34). After Ketz placed the handcuffs on him, Bultema was crouched down, leaning heavily against the porch railing with his chest. Stariha stated that Ketz and Anderson are "as much holding him up as his feet are holding himself up." J.A. at 127 (Stariha Dep. at 36). Stariha claimed it was at this point that Ketz used the pepper spray on Bultema. Thus, according to Stariha, though Bultema continued to struggle and squirm while handcuffed, he could barely stand upright and was clearly not a threat to anyone's safety nor was he attempting to evade arrest by flight. Therefore, viewing the facts in the light most

11

favorable to Bultema, we conclude that Ketz's use of pepper spray at this point was constitutionally unreasonable.

Bultema's second claim of excessive force is based on Stariha's statement that Ketz hit Bultema in the head after he had already been handcuffed and sprayed. It is beyond doubt that the act of a police officer hitting a restrained suspect in the head is excessive force. *See, e.g., Phelps v. Coy*, 286 F.3d 295, 302 (6th Cir. 2002) (holding that a police officer's tackling of a handcuffed suspect, hitting him in the face twice, and banging his head on the floor three times, was unconstitutional), *cert. denied*, 537 U.S. 1104 (2003); *McDowell*, 863 F.2d at 1307 (holding that a blow from a nightstick to a handcuffed, unresisting suspect was constitutionally unreasonable). In his brief, Ketz does not attempt to argue that this action as described by Stariha was reasonable, but instead claims that Bultema has not presented any evidence that the assault ever took place. Appellants' Br. at 15. We find this argument wholly unpersuasive.

We have stated that "[i]n deciding upon a motion for summary judgment, we must view the factual evidence and draw *all reasonable inferences* in favor of the non-moving party." *Nat'l Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997). In this case, Stariha explained in his deposition that he heard Ketz say "'shut up' and then I heard a whack and a thud. I heard . . . a vibration on the front of the house. . . . I turned around and I saw Ketz recoiling. He had a zip glove on and he had just hit Mr. Bultema on the side of the head." J.A. at 128 (Stariha Dep. at 39). Stariha also stated that following the blow, he saw Bultema "kind of in a fetal position, but still on his knees with his forehead on the ground." J.A. at 129 (Stariha Dep. at 41). In addition to Stariha's deposition, Bultema stated in his brief that he suffered "a severe contusion to the left side of his face and a closed head injury," which rendered Bultema unable to recall the events of that night.

12

Appellee's Br. at 9. While Stariha did not actually see Ketz's hand make contact with Bultema's face, we can draw the reasonable inference from the facts recounted by Stariha that Ketz hit Bultema on the side of his head. By doing so, Ketz violated Bultema's constitutional right to be free from an unreasonable seizure.

In sum, we conclude that when the facts and all reasonable inferences are viewed in the light most favorable to Bultema, he has demonstrated a constitutional violation.

## D. Qualified Immunity

Ketz next argues in his brief that even if his actions were unconstitutional, he should still be entitled to summary judgment on the ground of qualified immunity because a reasonable officer in his situation would not have known that his use of force was excessive. We find this argument to be wholly unpersuasive and conclude that under the facts alleged by Bultema, Ketz is not entitled to qualified immunity from suit.

Having determined that Ketz's actions as described by Stariha were constitutionally unreasonable, we turn to the next steps in the qualified immunity inquiry: whether the right which was violated was clearly established, and whether Ketz's actions were objectively unreasonable in light of that right. The Supreme Court has stated that "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The constitutional right cannot simply be a general prohibition, but rather "the right the official is alleged to have violated must have been clearly established in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S.

13

635, 640 (1987). "In inquiring whether a constitutional right is clearly established, we must look first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits." *Walton v. City of Southfield*, 995 F.2d 1331, 1336 (6th Cir. 1993) (internal quotation omitted).

It has long been held in this circuit that the right to be free from the use of excessive force under the Fourth Amendment is clearly established. *Adams*, 31 F.3d at 387. More specifically, in the context of the police's use of chemical spray to subdue a suspect, we held that it was clearly established in 1999 that a police officer's use of pepper spray against a suspect after he was handcuffed and hobbled constituted excessive force. *Champion*, 380 F.3d at 903. With regard to Ketz's alleged blow to Bultema's head, we have also held for more than twenty years that it is clearly established in this circuit that "a totally gratuitous blow" to a suspect who is handcuffed and offering no resistance violates the Fourth Amendment. *McDowell*, 863 F.2d at 1307. Thus, applying these precedents to this case, we conclude that Ketz's actions as described by Stariha violated a clearly established constitutional right.

Furthermore, we hold that Ketz's alleged actions were objectively unreasonable in light of this clearly established constitutional right. Ketz argues in his brief that "a reasonable officer in Deputy Ketz's position would not necessarily have known that it might be unlawful to use pepper spray or force on a plaintiff who assaulted him and who was actively resisting him." Appellants' Br. at 30. Moreover, he argues that a suspect "is not afforded a constitutional right to attack a police officer." Appellants' Br. at 30. We find Ketz's argument to be unpersuasive and his use of force in the context of the factual situation alleged by Bultema to be objectively unreasonable.

14

The Supreme Court has recognized that "the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. The Constitution permits a police officer to use even deadly force if the situation so requires. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). A police officer's use of force against a suspect is justified by the threat posed by the suspect to the safety of the officer or others. *Id.* By contrast, when a suspect has been already been *restrained*, the officer's constitutional authority to use force is significantly more circumscribed. This constitutional line serves to ensure that a police officer's authority to use legitimate force to detain does not cross into physical abuse of an incapacitated suspect. Thus, contrary to Ketz's argument, regardless of what the suspect may have done to the police officer prior to the arrest, the police officer is constitutionally prohibited from exacting retribution once the suspect has been subdued. Accordingly, we have repeatedly upheld limits upon police action against those already restrained. *See, e.g., Champion*, 380 F.3d at 905 (holding that "[n]o reasonable officer would have continued to spray a chemical agent in the face of a handcuffed and hobbled . . . arrestee"); *Phelps*, 286 F.3d at 302 (holding that no reasonable officer would strike a handcuffed arrestee in the head); *Adams*, 31 F.3d at 387 ("A reasonable person would know that spraying mace on a[n] . . . incapacitated person . . . would violate the right to be free from excessive force."). Therefore, we hold that under the facts as described by Stariha, no reasonable police officer in Ketz's situation would use pepper spray on Bultema or strike him in the head after he had already been placed in handcuffs.

In sum, we conclude that when viewing the facts in the light most favorable to Bultema, Ketz is not entitled to qualified immunity, because the constitutional right at issue was clearly established

15

and Ketz's actions were objectively unreasonable in light of that right. Accordingly, we affirm the district court's denial of summary judgment in favor of Ketz.

**E. The County's Appeal**

Similar to Ketz's appeal, the County also argues that the district court erred in denying its motion for summary judgment. We do not have statutory jurisdiction to hear the County's interlocutory appeal and we decline to exercise pendent appellate jurisdiction.

In its brief, the County argues that "this Court must find that Benzie County is entitled to qualified immunity. Accordingly, the District Court erred in denying Benzie County's motion for summary judgment on this issue." Appellants' Br. at 23. In *Owen v. City of Independence*, 445 U.S. 622, 657 (1980), however, the Supreme Court held that unlike government officials, a municipal entity does not have qualified immunity from suit brought pursuant to 42 U.S.C. § 1983. The Court held that a municipality was sufficiently protected by the requirement that it "will be forced to bear only the costs of injury inflicted by the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id.* (internal quotation omitted). The distinction between the two is that a government official's claim of qualified immunity is an assertion of a "right not to *stand trial*," *Mitchell*, 472 U.S. at 527; a municipality's assertion that the violation was not a policy or custom is a "mere defense to liability." *Swint v. Chambers County Comm'n*, 514 U.S. 35, 43 (1995) (internal quotation omitted). Accordingly, a district court's denial of summary judgment to a government official on the ground of qualified immunity "is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell*, 472 U.S. at 530. By contrast, "[a]n erroneous ruling on liability may be reviewed effectively on appeal from final judgment. Therefore,

16

the [district court's] order denying the [municipality]'s summary judgment motion [is] not an appealable collateral order." *Swint*, 514 U.S. at 43. Thus, we conclude that we are without jurisdiction to hear the County's interlocutory appeal pursuant to § 1291.

The sole exception to this general rule is where "the issues of [municipal] liability and qualified immunity are so related to each other that we can dispose of them together under the doctrine of pendent appellate jurisdiction." *Brennan v. Township of Northville*, 78 F.3d 1152, 1157 (6th Cir. 1996). Pendent appellate jurisdiction exists "where the appealable and non-appealable issues are 'inextricably intertwined'" such that we, in our discretion, decide to extend our jurisdiction over the municipal claim. *Id.* We have exercised this discretion where "the finding of nonexistence of a constitutional claim for immunity purposes necessarily decided the whole case not only in favor of the officer, but also in favor of the city as well." *Id.* at 1158. This is because there can be no unconstitutional municipal policy in the absence of unconstitutional conduct. *Tucker v. City of Richmond*, 388 F.3d 216, 224 (6th Cir. 2004), *cert. denied*, 125 S. Ct. 2306 (2005).

Applying these principles, we decline to exercise pendent appellate jurisdiction to entertain the County's appeal. Unlike in *Brennan* and *Tucker* in which we held there was no constitutional violation, we conclude in this case that under the facts as stated by Stariha, a constitutional violation occurred. Therefore, the County's appeal turns solely on whether Bultema has demonstrated that Ketz was acting pursuant to a municipal policy or custom. Thus, the issue in the County's appeal is not "indisputably coterminous with, or subsumed in" Ketz's qualified immunity inquiry. *Brennan*, 78 F.3d at 1158 (internal quotation omitted). "Although [Ketz]'s appeal and the [County]'s appeal overlap in some respects, the two appeals are not 'inextricably intertwined' because resolution of [Ketz]'s interlocutory appeal of the [excessive force] issue does not necessarily

17

resolve the [County]'s interlocutory appeal of the municipal policy or custom requirement."

*Crockett v. Cumberland College*, 316 F.3d 571, 579 (6th Cir. 2003). We could effectively review

the County's claims about the absence of a policy or custom after the district court has rendered a

final judgment in this case. Accordingly, we decline to exercise pendent appellate jurisdiction to

consider the County's municipal liability defense.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's denial of summary judgment to

Ketz and **DISMISS** the County's interlocutory appeal.

RYAN, Circuit Judge, concurring in part and dissenting in part.    While I agree with my colleagues that we lack appellate jurisdiction over Benzie County's appeal, I do not agree that we have appellate jurisdiction over Deputy Ketz's appeal.

In general, this court has no jurisdiction to entertain an interlocutory appeal from a district court's denial of summary judgment because it is not a "final decision[]."  28 U.S.C. § 1291; Klein v. Long, 275 F.3d 544, 549 (6th Cir. 2001).  In Mitchell v. Forsyth, 472 U.S. 511, 530 (1985), the Supreme Court recognized an exception to this general rule, holding that a district court's decision to deny summary judgment to a defendant claiming qualified immunity, to the extent that such a decision turns on an issue of law, is immediately appealable under the collateral order doctrine.  Ten years later, the Court clarified its holding in Mitchell, explaining "that a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." Johnson v. Jones, 515 U.S. 304, 319-20 (1995).

In this case, the district court denied the defendants' motion for summary judgment precisely because there were "genuine issues of material fact as to liability," without any mention whatever of "qualified immunity."  Plainly, this is not the language of a ruling upon an abstract issue of law. Rather, it is the boilerplate language of an order denying summary judgment because the facts necessary to determine liability are in dispute, and thus, is an order we have no jurisdiction to review at this stage of the proceeding.

Nevertheless, my colleagues conclude we have jurisdiction over this appeal simply because Ketz now claims in his brief that, even if Bultema's version of the facts is accepted as true, Ketz is

19

entitled to qualified immunity. From this, my colleagues reason that "the sole issue presented before us is a 'neat abstract issue of law.'" Maj. Op. at 8.

This court has previously declared that "[a] defendant's right to appeal the denial of qualified immunity does not turn on the phrasing of the district court's order[.]" Christophel v. Kukulinsky, 61 F.3d 479, 485 (6th Cir. 1995). Even when the denial of qualified immunity is premised on the existence of a factual dispute, "[t]he question whether the [plaintiff's] uncontested facts demonstrate[] a constitutional violation is a pure question of law—and one from which an immediate appeal can be taken where qualified immunity has been denied." Turner v. Scott, 119 F.3d 425, 428 (6th Cir. 1997).

Unlike the defendants in Turner and Christophel, however, Ketz did not, "[f]or purposes of his motion [for summary judgment], . . . accept[] the plaintiff's version of the facts as true." Id. Ketz discussed a number of claims and issues in his three-page motion, of which one sentence was dedicated to qualified immunity. In that sentence, Ketz concluded, without any reasoning whatsoever, that he was entitled to qualified immunity. Ketz did not invite the district court to consider Bultema's facts as true so as to argue that he was entitled to judgment as a matter of law. Instead, he invites this court to do so for the first time on appeal, and thus introduces a novel argument that we ordinarily do not consider. See Mich. Bell Tel. Co. v. Strand, 305 F.3d 580, 590 (6th Cir. 2002).

Instead of accepting what the district court said in plain English, my colleagues decide we have jurisdiction because of what the district court might have said, but did not. That creative approach to determining our jurisdiction is not the proper function of this court of review.

20

Given that Ketz's motion did not make any arguments regarding qualified immunity, it is not surprising that the district court's order contains no discussion of qualified immunity. This court has previously declined to exercise appellate jurisdiction over a district court's interlocutory order which "makes no mention of qualified immunity, and . . . [gives no] clear indication that the district court ever even considered the issue." Liberto v. Shelby County, No. 03-5290, 2004 WL 2367968, at *2 (6th Cir. Oct. 20, 2004) (unpublished disposition). Just like the defendant's motion in Liberto, Ketz's motion for summary judgment contained "an unsupported, one-sentence request for qualified immunity added for good measure," and just like the district court's order in that case, the district court's order here "denied the motion without any discussion whatsoever of qualified immunity." Id.

I do not agree that the question raised in this appeal presents, as the majority believes, a "neat abstract issue of law." While Ketz now claims to accept Bultema's version of the facts as true, he clearly does not do so, nor does he accept as true the inferences that can reasonably be drawn from those facts. Ketz denies that he violated Bultema's right to be free from excessive force, but fails to acknowledge pertinent testimony which clearly suggests otherwise. For example, Ketz asserts there is no evidence that he struck Bultema in the head after Bultema was handcuffed and subdued. However, Stariha testified that, although he did not actually see Ketz hit Bultema, he heard a "whack" and a "thud" and saw Ketz recoiling as if he had just hit Bultema's head against the wall. Ketz apparently would have this court believe that such circumstantial evidence, and the obvious implications to be drawn from it, are no evidence at all. Similarly, Ketz overlooks other damaging testimony in which Stariha claimed that Ketz sprayed chemical spray into Bultema's face after Bultema was handcuffed and subdued. Ketz's failure to acknowledge this testimony is not

21

surprising, since it would be difficult to argue that such conduct is deserving of qualified immunity when "it is clearly established that the . . . use of pepper spray against [a suspect] after he [is] handcuffed and hobbled [is] excessive." Champion v. Outlook Nashville, Inc., 380 F.3d 893, 903 (6th Cir. 2004), cert. denied, 125 S. Ct. 1837 (2005).

The majority's observation that Ketz did not raise these material factual disputes regarding his use of excessive force does not cut in favor of our exercising jurisdiction; it rather demonstrates that Ketz has not done what he has claimed to do, namely, accept Bultema's version of the facts as true. Ketz has not invited this court to apply legal principles to a given set of facts which are construed in the light most favorable to Bultema. Rather, Ketz obfuscates or overlooks certain material factual disputes in order to argue that he is entitled to summary judgment. If these factual disputes are material as to Ketz's liability, and they undoubtedly are, Ketz cannot simply ignore them while simultaneously claiming that he is entitled to summary judgment even under the plaintiff's version of the facts. Were it otherwise, every order denying qualified immunity because there is a genuine issue of fact for trial could be transformed into an immediately appealable decision simply if the defendant claims on appeal, albeit falsely, that he accepts the plaintiff's facts as true.

In my view, the district court's order is nothing more than an interlocutory denial of a motion for summary judgment because the facts necessary to determine liability are in dispute. Accordingly, I would dismiss Ketz's appeal for lack of appellate jurisdiction.

22