NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0064n.06

Case No. 21-3342

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| MERIBETHE INGRAM, | ) | **FILED**<br>Feb 03, 2022<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| | ) | |
| JOSEPH REGANO; FRED BOLDEN, | ) | |
| Defendants-Appellants. | ) | |
| | ) | |

---

Before: SUTTON, Chief Judge; SUHRHEINRICH and SILER, Circuit Judges.

SILER, Circuit Judge. Defendant school officials appeal the district court's order denying them state law immunity from a civil conspiracy claim. Because the Plaintiff's complaint contains sufficient factual allegations suggesting that the school officials acted in bad faith, we **AFFIRM** the district court's holding that, at the pleadings stage, the school officials are not entitled to immunity under Ohio Revised Code § 2744.

## I.

This case comes to us after a motion for judgment on the pleadings, so we take the facts as Plaintiff Meribethe Ingram alleges them and draw all reasonable inferences in her favor. *Coley v. Lucas County,* 799 F.3d 530, 537 (6th Cir. 2015). Ingram worked and volunteered in various capacities at Lewis Elementary School. But in December 2017, after her sexual harassment

grievance was reported to District Superintendent Joseph Regano, Ingram was prohibited from returning to the school. Then, at the end of January, District Assistant Superintendent Fred Bolden informed Ingram that *she* was under investigation and that she would continue to be barred from continuing in her roles at Lewis Elementary, pending the investigation into her actions. Despite her repeated requests, neither Regano nor Bolden ever provided Ingram with a written complaint outlining the allegations made against her.

As a result, Ingram filed a second grievance in February—this time, against a number of school officials for unlawful retaliation. Although they were both named as respondents in this grievance, Bolden and Regano oversaw and participated in its investigation: for instance, they discussed the investigation with the appointed investigator, they scheduled the witness interviews, and they decided which emails should be turned over to the investigator. By refusing to recuse themselves from this investigation, they violated the district's policy. And they have admitted that they should not have been involved.

In March, the district resolved Ingram's sexual harassment grievance against her. Regano issued the disposition, which held that Ingram had not been sexually harassed, but that, in fact, she herself had sexually harassed her own alleged harasser. In April, the district denied Ingram's retaliation grievance. Ingram appealed both decisions to the school board, which subsequently reached out to Ingram to discuss a possible settlement. But in May, Regano alerted the board that no further progress could be made through the negotiations. Days later, both appeals were denied.

After she obtained a right-to-sue letter from the U.S. Equal Employment Opportunity Commission, Ingram filed a lawsuit, which included a state law retaliation-based civil conspiracy claim against Regano and Bolden (collectively, the "school officials") in both their personal and official capacities. The school officials moved for judgment on the pleadings on various claims,

but the district court denied the motion as to Ingram's individual-capacity civil conspiracy claim. It concluded that the school officials were not entitled to Ohio law immunity because Ingram sufficiently alleged that they had acted outside the scope of their employment, maliciously or in bad faith. On appeal, the school officials argue (1) that Ingram's failure to plead the elements of the retaliation claim that underlies her civil conspiracy claim somehow forecloses the district court's conclusion on their immunity, and (2) that, in any event, Ingram has failed to plausibly allege that the school officials acted maliciously or in bad faith. We disagree on both accounts.

## II.

We review a district court's denial of a motion for judgment on the pleadings de novo. *See Coley,* 799 F.3d at 536-37 (6th Cir. 2015). But first, we clarify the scope of our jurisdiction. Under the collateral order doctrine, we may review a limited set of otherwise non-final decisions, including appeals of the denial of immunity under Ohio law. *Range v. Douglas,* 763 F.3d 573, 581 (6th Cir. 2014). Nevertheless, our interlocutory jurisdiction remains "limited to the specific issue of whether immunity was properly denied." *Id.* at 582 (citing *Est. of Owensby v. City of Cincinnati*, 414 F.3d 596, 605 (6th Cir. 2005)). So at the outset, we reject the school officials' attempts to shoehorn the merits of Ingram's retaliation-based civil conspiracy claim into this narrow appeal. *See id.* (refusing to consider arguments that "stray into underlying the merits of the state tort claims" in an interlocutory appeal of a denial of Ohio law immunity). Specifically, they urge us to consider whether Ingram has sufficiently pleaded each element of retaliation, the unlawful act that underlies her civil conspiracy claim. But this question is not "inextricably intertwined" with the question of whether the school officials are entitled to immunity, so it is not properly before us. *Cf. Brennan v. Twp. of Northville*, 78 F.3d 1152, 1157-58 (6th Cir. 1996).

Therefore, we turn to Ingram's complaint, considering only the narrow immunity question. Ohio law protects officials from liability in personal injury suits, but it comes with exceptions. Ohio Rev. Code Ann. § 2744.03(A). For example, it withholds immunity from officials when they act "with malicious purpose, in bad faith, or in a wanton or reckless manner." *Id*. § 2744.03(A)(6)(b). The school officials argue that Ingram has alleged only "naked conclusions" that they acted with malice or with bad faith, and they underscore Ingram's failure to allege that they made any comments or took any action which explicitly showed their ill will toward her. However, at the pleadings stage, we do not require Ingram to affirmatively demonstrate an immunity exception. *Meyers v. Cincinnati Bd. of Educ.*, 983 F.3d 873, 880 (6th Cir. 2020). Such a rigorous standard "would require [her] to overcome a motion for summary judgment in [her] complaint." *Id*.

Here, dismissal is appropriate only if we can conclude that Ingram's complaint is entirely "devoid of [allegations] tending to show that the [officers] acted" with the requisite intent that disqualifies them from the protection of statutory immunity. *Novak v. City of Parma*, 932 F.3d 421, 437 (6th Cir. 2019) (quoting *Irving v. Austin*, 741 N.E.2d 931, 934 (Ohio Ct. App. 2000)). But Ingram's complaint suffers from no such deficiency. In fact, it is replete with factual allegations suggesting that the school officials acted, at the very least, in bad faith, which indicates a "dishonest purpose" or "conscious wrongdoing" under Ohio law. *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 612 (6th Cir. 2015) (quoting *Cook v. Cincinnati*, 658 N.E.2d 814, 821) (Ohio Ct. App. 1995). Ingram alleged that Regano and Bolden failed to recuse themselves from the investigation of her retaliation grievance, even though she had named them as respondents. She alleged that Regano directed Bolden to "take care of" the investigation. She alleged a number of specific instances in which Bolden participated in the investigation. She alleged that Regano and

Bolden have both since admitted that "they should not have been involved" in it.  She alleged that ultimately both of her grievances and their appeals were denied, leaving her permanently barred from working and volunteering at the elementary school.

At this stage of the proceedings, these allegations sufficiently overcome the school officials' state law immunity defense, and Ingram's civil conspiracy claim may proceed for now. **AFFIRMED**.