NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0084n.06

No. 16-5165

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jan 30, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| PATRICIA LAUREN TUMMINELLO, individually and on behalf of the wrongful death beneficiaries of Spencer Tate, | ) ) ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | MIDDLE DISTRICT OF TENNESSEE |
| FATHER RYAN HIGH SCHOOL, INC., | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE:    DAUGHTREY, GIBBONS, and COOK, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge.  In his freshman year as a student at Father Ryan High School, Spencer Tate was bullied by several other students who called him "gay" and "fag" and suggested that he kill himself.  Tragically, Tate later committed suicide. His mother, plaintiff Patricia Tumminello, brought claims against Father Ryan under both Title IX of the Education Amendments of 1972, 20 U.S.C.§§ 1681-1688, and under Tennessee negligence law, alleging that Tate's suicide was caused by the harassment he experienced at school and by Father Ryan's failure to enforce the school anti-bullying policy.  The district court granted Father Ryan's motion to dismiss both claims.  The district court also denied Tumminello's motion to amend her complaint.  She now challenges the dismissal of these claims and the denial of her motion to amend.  Because Tumminello's complaint fails to allege a plausible claim to relief under Title IX or under state negligence law, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Spencer Tate was a freshman at Father Ryan High School during the 2013-2014 school year and, according to his mother, Patricia Tumminello, was relentlessly abused and harassed while on campus. Tate was called "faggot," "fag," "gay," and "suffered other sexually oriented and derogatory verbal abuse." In her complaint, Tumminello identified three male students as primarily responsible for the abusive behavior, which included advice to Tate to "go home and kill himself." Students also hit Tate with belts in a practice called "belt wars," a "common practice on Father Ryan's campus, where students would use belts as whips and hit other students with them." Tumminello claimed that the students responsible for mistreating Tate "had a history of abuse and harassment" at Father Ryan and "at other schools controlled by the Catholic Diocese of Nashville." Tate "took his own life" on February 25, 2014.

Tumminello filed a complaint in Tennessee state court alleging that Father Ryan was liable for negligently failing to enforce its own anti-bullying policy and for violating Title IX. Father Ryan removed the case to federal court and filed a motion to dismiss contending that Tumminello failed to state a claim under Title IX, failed to show Father Ryan had been negligent, and failed to show she was entitled to punitive damages. Tumminello filed a response that included a request that "should [the court] be inclined to grant the Motion [to dismiss], Plaintiff hereby moves for leave to amend her Amended Complaint."

Ultimately, the district court granted Father Ryan's motion to dismiss on all counts. The court found that Tumminello failed to make a plausible claim of student-on-student harassment under Title IX because she failed to show Tate had been subject to harassment on account of his sex; that she failed to make a plausible negligence claim because she failed to provide allegations from which the court could draw a reasonable inference that Tate's suicide was foreseeable; and that she failed to establish that punitive damages were appropriate in this

matter. Further, the district court denied Tumminello's motion for leave to amend her amended complaint because the motion "consists of a single sentence in her Response brief and does not set forth any proposed amendment or argument as to whether an amendment would meet the legal standard governing Rule 15(a)(2)." Tumminello then filed a motion to amend the judgment that the district court denied, leading to this appeal.

## DISCUSSION

### Title IX Claim

Tumminello asserts on appeal that, despite the fact that she pleaded a plausible Title IX claim, the district court erred in dismissing her complaint. She contends that because the district court "viewed the pleaded facts in an unfavorable light and took unfavorable inferences for same," the dismissal of the Title IX claim must be reversed.

"A district court's dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure is reviewed *de novo*." *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999). To survive a motion to dismiss, a complaint must include enough factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl.Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In determining whether a claim is plausible, "[w]e must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a).

Courts have recognized that student-on-student sexual harassment is actionable under Title IX. *Davis ex. rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 643 (1999); *Vance v. Spencer Cty. Pub. Sch. Dist.*, 231 F.3d 253, 258 (6th Cir. 2000). To establish a *prima facie* case of student-on-student sexual harassment, a plaintiff must allege three elements: (1) that the sexual harassment was so severe, pervasive, and objectively offensive that it could be said to deprive a student of access to the educational opportunities or benefits provided by the school, (2) that the funding recipient had actual knowledge of the sexual harassment, and (3) that the funding recipient was deliberately indifferent to the harassment. *Patterson v. Hudson Area Sch.*, 551 F.3d 438, 444-45 (6th Cir. 2009). As emphasized by the district court, the first element requires that the student be harassed on the basis of his or her sex. The district court dismissed Tumminello's Title IX claim for failure to demonstrate that Tate was harassed based on his sex, explaining "the most that can be inferred . . . is that other students harassed Tate based on his perceived sexual orientation." On appeal, Tumminello concedes that harassment on the basis of sexual orientation cannot form the basis of a cognizable Title IX claim, but she explains that the students harassed Tate because of his gender-non-conforming behavior or appearance, not because of his perceived sexual orientation. The problem with this contention is that it was not pleaded as a theory of recovery in Tumminello's complaint.

The boundaries of "on the basis of sex" have been more extensively analyzed under Title VII jurisprudence, which often is consulted when interpreting and applying Title IX. See*, e.g.*, *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 673 (6th Cir. 2013) ("[T]he standards articulated by Title VII cases are sufficient to establish the applicable legal framework here."); *Doe v. Claiborne Cty.*, 103 F.3d 495, 515 (6th Cir. 1996) ("Second, the elements to state a supervisory hostile environment claim under Title VII equally apply under Title IX"); *see also Papelino v.*

*Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 89 (2d Cir. 2011) ("[A] Title IX sex discrimination claim requires the same kind of proof required in a Title VII sex discrimination claim"). Consequently, we turn to prior Title VII decisions to aid our interpretation of Title IX's "on the basis of sex" requirement.

Under Title VII, the Supreme Court established that harassment or stereotyping based on a person's gender-non-conforming behavior is impermissible discrimination. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 250-51 (1989). This circuit has followed course. In *Smith v. City of Salem*, for example, we held valid the plaintiff's claim for relief alleging that "the discrimination he experienced was based on his failure to conform to sex stereotypes by expressing less masculine, and more feminine mannerisms and appearance." 378 F.3d 566, 572 (6th Cir. 2004). And, in *Barnes v. City of Cincinnati*, the plaintiff stated a claim for relief by "alleging that his failure to conform to sex stereotypes concerning how a man should look and behave was the driving force behind defendant's action . . . ." 401 F.3d 729, 737 (6th Cir. 2005).

But although we have recognized the existence of sex-stereotyping in certain situations, in *Vickers v. Fairfield Medical Center*, 453 F.3d 757, 763 (6th Cir. 2006), we concluded that Vicker's claim was more akin to a complaint of discrimination based on sexual orientation than to a viable sex-stereotyping claim.

In *Vickers*, the plaintiff's co-workers called him "fag" and "gay," ridiculed him for being a homosexual, subjected him to vulgar gestures, and made lewd comments suggesting that he provide them with sexual favors. *Id*. at 759. The co-workers touched Vickers in his crotch with a tape measure, handcuffed and simulated having sex with him, and shoved sanitary napkins in his face (among other incidents). *Id*. at 759-760. "Vickers contend[ed] that in the eyes of his co-workers, his sexual practices, whether real or perceived, did not conform to the traditionally

masculine role." *Id*. at 763. We declined to accept his argument, concluding "that the theory of sex stereotyping . . . is not broad enough to encompass such a theory" and that "his claim fails because Vickers has failed to allege that he did not conform to traditional gender stereotypes in any observable way at work." *Id*. at 763-764. The deficiency of Vickers's allegations was that they failed to focus on any workplace behavior that could result in sex stereotyping. Rather, the claim was that he was perceived as being homosexual. We expressed concern that "recognition of Vickers'[s] claim would have the effect of *de facto* amending Title VII to encompass sexual orientation as a prohibited basis for discrimination." *Id*. at 764.

Discerning the line between discrimination based on gender-non-conforming characteristics that supports a sex-stereotyping claim and discrimination based on sexual orientation is difficult. Despite the practical problems with the current interpretation of Title VII and Title IX, "a panel of this Court cannot overrule the decision of another panel."[1] The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." *Darrah v. City of Oak Park*, 255 F.3d 301, 309 (6th Cir. 2001) (internal quotation marks and citation omitted). For Tumminello to plead successfully a claim of sex

---

[1] We note that neither the Supreme Court nor any circuit has as yet determined that discrimination based on sexual orientation is prohibited by Title VII. That situation existed before *Vickers*, *see, e.g.*, *Medina v. Income Support Div.*, 413 F.3d 1131, 1135 (10th Cir. 2005); *Bibby v. Phila. Coca Cola Bottling Co.*, 260 F.3d 257, 261 (3d Cir. 2001); *Simonton v. Runyon*, 232 F.3d 33, 35 (2d Cir. 2000); *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 259 (1st Cir. 1999); and it remains the case today, *see, e.g.*, *Gilbert v. Country Music Ass'n, Inc.*, 432 F. App'x 516, 519–20 (6th Cir. 2011); *Pagan v. Gonzales*, 430 F. App'x 170, 171–72 (3d Cir. 2011); *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1222 (10th Cir. 2007). Yet, the Seventh Circuit has recently granted *en banc* review in a case that could permit it to reconsider its stance. *See* Order Granting Rehearing *En Banc* and Vacating the Panel Opinion, *Hively v. Ivy Tech Cmty. Coll.*, 830 F.3d 698 (7th Cir. 2016), *vacated and reh'g en banc granted* 2016 WL 6768628 (No. 15-1720). And the EEOC concluded last year that "sexual orientation is inherently a 'sex-based consideration' and an allegation of discrimination based on sexual orientation is necessarily an allegation of sex discrimination under Title VII." *Baldwin v. Foxx*, EEOC Appeal No. 0120133080, 2015 WL 4397641, at *5, 10 (July 15, 2015).

discrimination based on a theory of sex-stereotyping recognized by this circuit, she must allege facts showing that Tate did not conform to traditional gender stereotypes in an observable way and that these characteristics were the basis for his harassment. Allegations to this effect are nowhere apparent in Tumminello's complaint, nor can we construct an inference in this regard, as she asks us to do on appeal, because there is no factual support for such an inference. For all that appears in the complaint, the taunts lobbed at Tate were simply name-calling of a kind particularly odious to adolescents.

The complaint lists other examples of how Tate was bullied—such as getting hit with belts and being told to kill himself—but the complaint does not allege any facts allowing us to conclude that these actions were taken against Tate on the basis of his sex. Similar to the abuse suffered in *Vickers*, "while the harassment alleged . . . conduct that is socially unacceptable and repugnant . . . [plaintiff's] claim does not fit within the prohibitions of the law." *Vickers*, 453 F.3d at 764-765.

Because the district court dismissed Tumminello's Title IX claim after finding no evidence of harassment on the basis of sex, it did not discuss whether the complaint satisfied the remaining two elements of a *prima facie* case of Title IX student-on-student harassment. The deficiencies of Tumminello's claim extend beyond the failure to prove sexual harassment, however. The second and third elements required to make out a *prima facie* claim of Title IX student-on-student harassment are that the funding recipient had "actual knowledge" of the harassment, and was "deliberately indifferent" to the harassment. *Patterson*, 551 F.3d at 445. Taking all facts alleged by Tumminello to be true, she simply cannot satisfy her initial burden in this case. To prove that Father Ryan had "actual knowledge" of the harassment yet was "deliberately indifferent" to it, Tumminello alleges only that "Father Ryan knew or should have

known of the relentless abuse and harassment of Spencer Tate . . . this was, among other things, because the students doing the abusing and harassment had a history of abuse and harassment at Father Ryan and at other schools controlled by the Catholic Diocese of Nashville."  However, such an allegation does not plausibly establish that "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures . . . has actual knowledge" of the discriminatory behavior at issue.  *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998).  Even though Tumminello concludes summarily at one point that "Father Ryan . . . had actual knowledge of the abuse and harassment described herein and was deliberately indifferent to said abuse and harassment," such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a motion to dismiss.  *Iqbal*, 556 U.S. at 678.

**Negligence Claim**

Tumminello also appeals the district court's dismissal of her state-law claim of negligence against Father Ryan.  We review the district court's dismissal of this claim *de novo*.  *See Greenberg*, 177 F.3d at 514.  Again, a complaint must include factual allegations supporting a plausible claim to relief in order to survive a motion to dismiss.  *Twombly*, 550 U.S. at 570.  In Tennessee, a claim of negligence requires proof of the following elements: "(1) a duty of care owed by the defendant to the plaintiff;  (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty;  (3) an injury or loss;  (4) cause in fact;  and (5) proximate or legal cause."  *West v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 550 (Tenn. 2005).  The district court dismissed Tumminello's claim after finding inadequate support in the complaint for the proposition that the actions or omissions of the school were the proximate cause of Tate's suicide and thus did not consider any of the remaining elements of a negligence claim.

> Proximate causation exists when three factors are satisfied:
>
> (1) the tortfeasor's conduct must have been a substantial factor in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence.

*Id.* at 553 (internal quotation marks and citations omitted). Because suicide is often an unforeseeable act, it is "consistently recognized" as an independent intervening cause that relieves a negligent actor from liability. *Rains v. Bend of the River*, 124 S.W.3d 580, 592 (Tenn. Ct. App. 2003). However, the Tennessee Supreme Court has held that if a person's negligent conduct created a *foreseeable* risk of another person committing suicide, the decedent's act of committing suicide does not reduce the negligent actor's liability. *White v. Lawrence*, 975 S.W.2d 525, 531 (Tenn. 1998). As with any proximate-cause analysis, the foreseeability of the injury is therefore an essential consideration.

The parties complicate this issue by discussing three specific scenarios in which Tennessee courts have found suicide not to be an independent intervening cause:

> (1) [c]ircumstances in which the defendant's negligence causes delirium or insanity that results in self-destructive acts . . . (2) custodial settings in which the custodian knew or had reason to know that the inmate or patient might engage in self-destructive acts . . . and (3) special relationships, such as a physician-patient relationship, when the caregiver knows or has reason to know that the patient might engage in self-destructive acts.

*Rains*, 124 S.W.3d at 593–94 (internal citations omitted). Tumminello claims on appeal that Father Ryan and Tate were in a qualifying "special relationship" under the third "exception" cited in *Rains* because Father Ryan was "*in loco parentis*" with Tate. But, she offers little support for why we should find the doctrine of *in loco parentis* applicable, or why being *in loco parentis* qualifies as the type of "special relationship" necessary for the exception to apply.

We conclude that the answers to these questions are not determinative of the issue on appeal, however. The determinative question is whether Tate's suicide was a reasonably foreseeable consequence of Father Ryan's failure to enforce the school's anti-bullying policy. If the facts alleged in Tumminello's complaint do not allege foreseeability, the requirements of the "special relationship" exception are not met; if the facts do establish foreseeability, she can establish proximate cause regardless of whether any of the "exceptions" apply.

The complaint alleges the following non-conclusory facts relevant to foreseeability: Tate was called "faggot," "fag," and "gay" and hit with belts on Father Ryan's campus; students told Tate to go kill himself; Tate avoided school and school activities; the students responsible for harassing Tate had a history of "abuse and harassment" at Father Ryan; and Father Ryan had an anti-bullying policy. The district court also considered a fact sheet cited by Tumminello in her response to Father Ryan's motion to dismiss, which Tumminello alleges had been distributed to Father Ryan by the U.S. Department of Education in 2010 and which explains that student-on-student bullying can result in self-harm and suicidal ideation. But, the complaint does not include allegations that any teacher or administrator at Father Ryan saw or heard students bully Tate, that Tumminello or Tate ever complained to a teacher or administrator about the bullying, or that any other student reported the bullying.

The district court found that Tate's suicide was not "reasonably foreseeable because the complaint does not allege [Father Ryan] was on notice of Tate's state of mind." This standard is undoubtedly too high. Our newspapers and television networks consistently report instances when young people harm themselves or others after being bullied by their peers. Such occurrences may not be common within an individual school, but because reports of these tragedies are consistent and well-publicized, all school districts should realize that self-harm is a

reasonably foreseeable result of bullying, without requiring specific evidence of the victim's mental state. If a school *is aware* of a student being bullied but does nothing to prevent the bullying, it is reasonably foreseeable that the victim of the bullying might resort to self-harm, even suicide.

Thus, to allege successfully that Tate's suicide was foreseeable, Tumminello's complaint should have included facts alleging that Father Ryan was aware of the abuse and harassment Tate experienced. The complaint fails to make such allegations. The fact that the students responsible for bullying Tate had a history of this behavior does not establish the school's knowledge that they continued to be bullies or that Tate was their new victim. Tumminello provides no facts that any teacher saw or heard the bullying, that Tate or Tumminello told anyone at the school what was happening, or any other fact to support an inference that Father Ryan had any knowledge of the situation. A school with no knowledge of bullying has no reason to believe the anti-bullying policy needs enforcement, let alone that failure to enforce the policy may result in a student's death. Therefore, we cannot conclude that "the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence." *West*, 172 S.W.3d at 553.

Proximate causation is a jury question unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome. *Frady v. Smith*, 519 S.W.2d 584, 586 (Tenn.1974). Taking the very few allegations made in the complaint as true, Tumminello has not "nudged [her] claim . . . across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. In sum, the complaint fails to allege that Father Ryan's actions were the proximate cause of Tate's death and therefore fails to allege all elements necessary for a claim of negligence against Father Ryan.

**Punitive Damages Claim**

The district court denied Tumminello's request for punitive damages under Title IX and under state law, and Tumminello appeals that decision as well. "If no constitutional issue is raised, the role of the appellate court, at least in the federal system, is merely to review the trial court's determination [of the level of punitive damages] under an abuse-of-discretion standard." *Cooper Indus. Inc., v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 433 (2001) (internal quotation marks and citation omitted).

The district court found that Tumminello failed to make out a claim under Title IX, and, therefore, did not abuse its discretion by finding punitive damages unavailable under Title IX. Under state law, Tumminello would be eligible for punitive damages only if the district court found that Father Ryan acted recklessly. "A person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). The district court found that Tumminello failed to allege facts showing Father Ryan was aware Tate might try to hurt himself, or that Father Ryan was aware but consciously disregarded the risk, and therefore decided punitive damages were not appropriate. Tumminello points to no facts explaining why the decision to deny punitive damages was an abuse of the district court's discretion, beyond claiming that the district court's determination on the question of recklessness was incorrect. This claim was properly dismissed.

**Denial of Motion to Amend**

Finally, Tumminello appeals the district court's denial of her motion to amend her complaint, claiming that the district court applied an incorrect legal standard in ruling on this motion. We review the denial of a motion to amend for abuse of discretion. *Colvin v. Caruso*,

605 F.3d 282, 294 (6th Cir. 2010). "[A]n abuse of discretion standard of review is highly deferential" and "an appellate court may overturn a lower court's ruling only if it finds that the ruling was arbitrary, unjustifiable or clearly unreasonable." *Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255, 267 (6th Cir. 2001) (internal quotation marks and citations omitted).

Tumminello included this single-sentence motion to amend within her response to Father Ryan's motion to dismiss: "Respectfully, should this Honorable Court be inclined to grant the Motion [to dismiss], Plaintiff hereby moves for leave to amend her Amended Complaint, which, respectfully, should be granted." In denying this motion, the district court acknowledged that Rule 15(a)(2) of the Federal Rules of Civil Procedure requires courts to grant leave to amend freely when justice requires but explained that "a motion for leave to amend must comply with Rule 7" and state the grounds for seeking the order. The district court further reasoned that in order to determine whether justice requires the granting of a motion to amend, the court must know the substance of the proposed amendment.

It is unclear whether Tumminello is also appealing the district court's denial of her motion to amend or alter the judgment denying her motion to amend her complaint. In her brief, Tumminello claims, "Twice the District Court denied Mrs. Tumminello leave to amend her operative pleading in this case." The second "denial" Tumminello refers to is the district court's denial of her motion to amend or alter judgment of the decision to deny her motion to amend the complaint.

A denial of a motion to alter or amend the judgment under Rule 59(e) is reviewed for an abuse of discretion. *Nat'l Ecological Found. v. Alexander*, 496 F.3d 466, 476 (6th Cir. 2007). In denying this motion, the district court explained that Tumminello "has not identified a clear error of law, demonstrated a need to prevent manifest injustice, or otherwise met the

requirements of Rule 59." Tumminello's contends, however, that the district court's decisions (presumably in both the denial of the motion to amend the complaint and the denial of the motion to amend or alter judgment) were erroneous because the court "relied heavily" on *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435 (6th Cir. 2014), which concerned claims under the Private Securities Litigation Reform Act, legislation not subject to the "usual liberal standards under Rule 15." *Id.* at 445. Tumminello intimates that by including citations to *Kuyat*, the district court must not have applied the standards of Rule 15 in considering her motion. There is no merit to this argument. The district court clearly cited to Rule 15 and acknowledged that judges are required to grant motions to amend when justice so requires. The district court considered Rules 15 and 7 of the Federal Rules of Civil Procedure, as well as circuit precedent, and found that justice did not require the court to grant Tumminello's motion to amend the complaint. Thus, the district court's denials of Tumminello's motions were not arbitrary, unjustifiable, or unreasonable. In denying Tumminello's motion to amend or alter that judgment, the district court considered the requirements of Rule 59 and found them not to have been satisfied.

## CONCLUSION

For the reasons set out above, we AFFIRM the district court's grant of defendant Father Ryan High School's motion to dismiss and the court's orders denying the plaintiff's post-judgment motions to amend the complaint and to alter or amend the judgment.