RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0390p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

KAREN MEYERS, as Administratrix of the Estate on behalf of Gabriel Taye; CORNELIA REYNOLDS; BENYAM TAYE,

*Plaintiffs-Appellees*,

*v.*

No. 18-3974

CINCINNATI BOARD OF EDUCATION; MARY RONAN, In her Official Capacity as Superintendent of Cincinnati Public Schools,

*Defendants*,

RUTHENIA JACKSON, Individually and in her Official Capacity as Principal of Carson Elementary School; JEFFREY MCKENZIE, Individually and in his Official Capacity as Assistant Principal of Carson Elementary School,

*Defendants-Appellants*.

───────────────

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:17-cv-00521—Timothy S. Black, District Judge.

Argued: December 4, 2019

Decided and Filed: December 29, 2020

Before: GRIFFIN, STRANCH, and DONALD, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Aaron M. Herzig, TAFT, STETTINIUS & HOLLISTER LLP, Cincinnati, Ohio, for Appellants. Jennifer L. Branch, GERHARDSTEIN & BRANCH CO. LPA, Cincinnati, Ohio, for Appellees. **ON BRIEF:** Aaron M. Herzig, Philip D. Williamson, TAFT, STETTINIUS & HOLLISTER LLP, Cincinnati, Ohio, Ian R. Smith, MCCASLIN IMBUS & MCCASLIN,

Cincinnati, Ohio, for Appellants.  Jennifer L. Branch, Janaya Trotter Bratton, M. Caroline Hyatt, GERHARDSTEIN & BRANCH CO. LPA, Cincinnati, Ohio, Michele L. Young, Christine M. Hammond, GREGORY S. YOUNG CO., LPA, Cincinnati, Ohio, for Appellees.

————————————

**OPINION**

————————————

BERNICE BOUIE DONALD, Circuit Judge.  This civil rights action arises from the death of eight-year-old Gabriel Taye, who died by suicide on January 26, 2017.  Taye was a third-grade student at Carson Elementary School, part of the Cincinnati Public Schools ("CPS") system in Cincinnati, Ohio.  The plaintiffs-appellees (collectively, "the Plaintiffs")—Karen Meyers (as Administratrix of the Estate of Gabriel Taye) and Taye's parents, Cornelia Reynolds and Benyam Taye—filed this action under 42 U.S.C. § 1983 against the Cincinnati Board of Education ("the Board"); now-retired Cincinnati Public Schools Superintendent Mary Ronan; former Carson Elementary principal, Ruthenia Jackson; former Carson Elementary assistant principal, Jeffrey McKenzie; and former Carson Elementary school nurse, Margaret McLaughlin (collectively, "the CPS Defendants").[1]  The Plaintiffs also alleged against Jackson, McKenzie, and McLaughlin state law tort claims of wrongful death, intentional infliction of serious emotional distress, negligent infliction of emotional distress, loss of consortium, and failure to report child abuse.  Additionally, the Plaintiffs brought a claim of spoliation against the Board, Ronan, Jackson, and McKenzie, as well as a claim of negligence against McLaughlin.

In lieu of filing an answer to the original complaint, the Board, Ronan, Jackson, and McKenzie moved to dismiss the Plaintiffs' state law claims, in part on the grounds that they are entitled to governmental immunity pursuant to Ohio Rev. Code § 2744.  The district court denied the motion to dismiss on those grounds.  On appeal, Jackson and McKenzie argue that they are entitled to governmental immunity with respect to the Plaintiffs' state law claims because the amended complaint fails to allege sufficient facts to establish that their conduct was "reckless" as

———————————

[1]After briefing the motion to dismiss, Plaintiffs filed for leave to amend their complaint to include McLaughlin as a defendant, adding a negligence claim against her.  The district court granted leave to amend at the same time that it granted in part and denied in part the motion to dismiss.  The court accepted the amended complaint as the operative pleading and applied the motion to dismiss to it.

a matter of law.**2**  Because we find that the Plaintiffs' amended complaint sufficiently alleges facts that establish that Jackson and McKenzie behaved recklessly, we AFFIRM the district court's denial of Jackson and McKenzie's motion to dismiss, holding that they are not entitled to governmental immunity under Ohio Rev. Code § 2744.

I.

On January 26, 2017, third-grade student Gabriel Taye tied a necktie to his bunkbed and hung himself.  Two days before Taye's death, another Carson Elementary student attacked Taye in a school bathroom, knocking Taye unconscious for more than seven minutes.  The bathroom incident was one of twelve incidents spanning from Taye's first-grade year at Carson Elementary until his death during his third-grade year that the Plaintiffs allege show a pattern of "aggressive behavior," including "bullying" at Carson Elementary, which ultimately led to Taye's suicide.  The Plaintiffs also allege that Jackson and McKenzie misrepresented the severity of and outright concealed several bullying incidents involving Taye.   The Plaintiffs uncovered information about these incidents after Taye's death.

A.

The violent incidents Taye experienced at Carson Elementary began during his first-grade school year.  On September 23, 2014, Taye was injured on the playground at Carson Elementary.  The school informed Taye's mother that the injury resulted from an "accident" on the playground, providing no additional details.  Although the school reported to Taye's mother that his injuries were not severe, Taye's two front teeth were removed as a result of the injury.

Three more incidents occurred during Taye's second-grade school year.  On October 7, 2015, a student hit Taye at school.  Taye's parents learned of the incident after his death because no one from the school contacted them about the incident at the time it occurred.  Subsequently, on February 22, 2016, another student hit Taye at school.  Although the school nurse treated Taye's injury, the school failed to even attempt to contact Taye's parents about the incident.  Further, there is no indication that the school reprimanded the students that attacked

---

**2**Only the state law tort claims against Jackson and McKenzie are at issue on appeal.

Taye on these occasions. On May 4, 2016, an unspecified "incident" occurred on the playground involving Taye. School reports state that the school took some form of action regarding another student, but the school did not record any additional details. No one from the school contacted Taye's parents about the incident; they again learned of it after Taye's death.

The Plaintiffs further allege that the bullying incidents at the school escalated during Taye's third-grade year at Carson Elementary. On September 7, 2016, school records show that Taye shoved and punched another student and the school reprimanded him for the behavior. The Plaintiffs allege that Taye may have been "defending himself from bullying by a student," as the details surrounding the incident are still unclear. Although the school's records indicate that someone at the school left a voicemail with Taye's mother, she denies receiving it. Further, the school failed to even attempt to contact Taye's father, who was also listed as an emergency contact for Taye.

Three more incidents occurred in October of 2016. On October 3, Taye and another male student were involved in an altercation. Again, although school records indicate that someone from the school left a voicemail with Taye's mother, the school again failed to contact Taye's father, and Taye's mother denies having ever received a voicemail. On October 7, a student punched Taye, and Taye punched the student back in self-defense. The school called security and gave the instigator a warning but did not otherwise punish that student. The school also warned Taye that he would be punished if he punched a student in self-defense. No one from the school contacted either of Taye's parents to inform them that their child had been injured and told that he was not permitted to defend himself. On October 31, Taye suffered a head injury on the playground, but Jackson and McKenzie were unable to determine what, or who, caused the injury. The school informed Reynolds, Taye's mother, about the injury, and she requested permission to view the surveillance footage of the playground at the time of the incident. The school did not permit Reynolds to review the footage or provide her with any explanation as to how the injury happened.

Taye was attacked three more times at school during the weeks leading up to his death in January 2017. On January 9, two students identified as C.J. and P.B. attacked Taye and punched him in his mouth. Taye suffered a bloody lip, which the school nurse treated. The nurse called

Taye's mother and told her that two students had punched Taye in the face, giving him a bloody nose and mouth. Reynolds also spoke with McKenzie, who assured her that he would review the surveillance footage and meet with C.J. and P.B. about their behavior. McKenzie met with the students the next day. Although C.J. and P.B. attempted to shift the blame for the fight to a third student, claiming this unidentified third student was responsible for Taye's injuries, McKenzie suspended C.J. and P.B., requiring them to leave Carson Elementary that day. On January 12, McKenzie met with Taye, Reynolds, C.J., P.B., and P.B.'s father. McKenzie denied Reynolds' request to view the video surveillance of the incident, instead insisting that the video did not capture the incident and that he had determined Taye's injuries were merely the result of "horseplay" and "an accident." McKenzie chose not to tell Reynolds that he had suspended C.J. and P.B. for their behavior and failed to address how, if at all, he planned to prevent or address any future aggressive behavior from these two students. The Plaintiffs allege that withholding this information prevented Reynolds from "realiz[ing] how much danger her son was in by remaining at Carson [Elementary]."

On January 18, while Taye was eating his lunch, a student approached Taye in the cafeteria and began kicking him. As a result, Taye's thumb was injured and he dropped his lunch tray, presumably embarrassing him in front of his other classmates. Jackson and McKenzie did not tell Reynolds which student attacked Taye and refused to allow her to review video footage of the incident.

B.

At 12:11 p.m. on January 24, 2017, two days before Taye's death, a student identified as P.A.[3] began violently attacking three boys in the school bathroom. P.A. punched one boy so hard he fell to the floor and curled up. Taye walked into the bathroom as P.A. was attacking the other boys. P.A. grabbed Taye's hand and yanked him toward the wall, causing Taye's head to collide with something. As Taye collapsed to the floor, the surveillance footage shows P.A. celebrating Taye's fall. As he lay on the floor unconscious, more than a dozen students passed through the bathroom, taunting and kicking Taye as they came and went.

---

[3]The initials "P.A." stand for "Primary Aggressor." The CPS Defendants have continually refused to tell the Plaintiffs who attacked Taye.

McKenzie responded to the situation and found Taye, lying motionless on the floor and still unconscious. Upon seeing Taye, McKenzie did not attempt to check Taye's vital signs or call for help. Rather, McKenzie repositioned a trash can and stood over Taye, doing nothing. By the time the school nurse arrived, Taye had been lying on the floor unconscious for more than seven minutes. Taye regained consciousness shortly thereafter. The school nurse examined Taye but did not call 911. Instead, an hour after the incident, the school nurse called Taye's mother and told her that Taye had "fainted," was "alert," that his "vitals [were] fine," and that he didn't require any additional medical attention. Taye told his mother that he could not remember what happened that day in the bathroom, only that he fell and that his stomach hurt. Jackson and McKenzie never told Reynolds that a student attacked her son in the bathroom, that the same student attacked other boys in the bathroom that day, or that her son was unconscious for more than seven minutes.[4] None of the Defendants reported this incident, either internally or externally.

Later that evening, Taye experienced stomach pain and nausea, which caused him to vomit twice. Reynolds took him to the hospital and informed the doctors that Taye had "passed out" at school that day. However, Reynolds was unable to give the doctors information about Taye's head injury because, at that time, she had no idea that Taye *had* suffered a head injury. The hospital diagnosed him with a stomach flu and discharged him. Taye stayed home from school on January 25, the day after P.A. attacked him. Reynolds called the school that day and reported that Taye became ill and had to go to the hospital overnight.

Taye returned to school on January 26, 2017. That day, two boys again attacked Taye while he was in the school bathroom, stealing his water bottle and attempting to flush it down the toilet. Taye reported the incident to a teacher, but nothing came of it. Taye came home from school that day around 5:30 p.m., took one of his neckties, and used it to hang himself from the top bunk of his bunk bed. Taye's mother found him hanging from the bunk bed, unresponsive. As Reynolds began administering CPR to Taye, a neighbor heard her screaming and came to

---

[4]After Taye's death, the Plaintiffs were able to recover a redacted copy of the surveillance video of this incident.

help.  Reynolds called 911 as her neighbor attempted to revive her son.  When the paramedics arrived on the scene, they were unable to revive Taye.

## C.

In addition to the incidents involving Taye, Carson Elementary behavior logs document routine aggressive and violent behavior among the student population throughout the 2016–2017 school year.  For example, a third-grader threw a chair and yelled at a female classmate, "I wish I had a gun so I could rape her"; a student threatened to shoot a teacher;  and several instances of students attempting to choke each other.  The behavior logs also included reports of students throwing furniture, pushing and hitting other students, threatening other students verbally and physically, using profanity, and one instance of a student making a racist remark to an African-American student.

The Plaintiffs allege that these incidents show that the environment at the school fostered aggressive behavior among students and that Jackson and McKenzie attempted to conceal this behavior to maintain a clean record.  Pursuant to O.R.C. § 3313.666, Carson Elementary is required to semiannually report the number of bullying incidents that have occurred at the school.  Despite the aforementioned incidents recorded in the school's student behavior log, the school reported zero incidents of bullying for the fall semester of the 2016–2017 school year.  The school also documented in student behavior logs two incidents it explicitly labeled as "bullying" in December 2016, but it failed to include these in its first semester report.  During the spring semester, although Carson Elementary reported four bullying incidents, it failed to report the incidents involving Taye directly preceding his death.  The Plaintiffs allege that Carson Elementary falsely reported the number of "bullying incidents" and concealed the instances of bullying, harassment, and aggressive behavior that took place during the fall 2016 semester from the parents of the victimized children.  The Plaintiffs allege that the "destructive and dangerous climate at Carson" created an unsafe environment for students and intentionally kept parents in the dark.  In Taye's case, the Plaintiffs allege that had Taye's mother known the level of bullying and trauma her son had experienced as a student at Carson Elementary and the actual facts surrounding her son's injuries on January 24, she would never have let him continue to attend school at Carson Elementary.

The Plaintiffs also present factual allegations suggesting that Jackson and McKenzie intentionally destroyed potential surveillance footage of the incidents in which Taye suffered injuries. The Plaintiffs allege that once the school was notified of Taye's death and the police started investigating, the CPS Defendants failed to preserve footage of the events occurring on the day of Taye's death and refused to allow Taye's mother to review any footage of the few incidents they chose to inform her of previously. Finally, the Plaintiffs assert that Jackson and McKenzie's cover-up, aimed at keeping any information regarding the rampant violence and aggressive behavior at Carson Elementary a secret, constitutes reckless, wanton disregard for Taye and his classmates' safety.

D.

On August 7, 2017, the Plaintiffs filed a complaint alleging federal and state law claims against the CPS Defendants. Specifically, the Plaintiffs asserted state law claims of wrongful death, intentional infliction of serious emotional distress, negligent infliction of emotional distress, loss of consortium, failure to report child abuse, and spoliation against Jackson and McKenzie. In response, the CPS Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) arguing, among other things, that governmental immunity barred suit against Jackson and McKenzie. The Plaintiffs then requested leave to file an amended complaint, which the district court granted.

The district court denied the motion to dismiss with respect to Jackson and McKenzie's governmental immunity claim. The district court found that the amended complaint included factual allegations that plausibly state that Jackson and McKenzie affirmatively misrepresented to Taye's mother that Taye had fainted, rather than admit that Taye had been knocked unconscious. On that basis, the district court concluded that Jackson and McKenzie should have known that these misrepresentations presented a substantial risk of serious harm because Jackson and McKenzie knew that a risk of bullying is suicide. Accordingly, the district court held that

the Plaintiffs plausibly alleged facts showing that Jackson and McKenzie's conduct was reckless, thereby precluding them from asserting governmental immunity.[5]

## II.

## A.

This Court reviews de novo a district court's grant of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 246 (6th Cir. 2012). In evaluating a Rule 12(b)(6) motion to dismiss, we construe "the record in the light most favorable to the non-moving party" and determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 246–47 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" but is not akin to a probability requirement. *Id.* In conducting this analysis, "the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)).

"In applying state law, we anticipate how the relevant state's highest court would rule in the case and are bound by controlling decisions of that court. Intermediate state appellate courts' decisions are also viewed as persuasive unless it is shown that the state's highest court would decide the issue differently." *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005) (citation omitted). Under Ohio law, a denial of governmental immunity is a final and appealable

---

[5]The Cincinnati Board of Education and Ronan attempted to join this appeal via pendent jurisdiction over the Plaintiffs' federal claims, asserting that resolution of the governmental immunity issue would necessarily resolve the Plaintiffs' federal constitutional claims. The Plaintiffs filed a motion to dismiss the Cincinnati Board of Education and Ronan's appeal for lack of jurisdiction. This Court granted the Plaintiffs' motion and struck the CPS Defendants' original brief, declining to expand our jurisdiction over the federal claims because they are insufficiently intertwined with the issue of governmental immunity to warrant pendent appellate jurisdiction.

judgment under the collateral order doctrine. *See Hidden Vill., LLC v. City of Lakewood, Ohio*, 734 F.3d 519, 524 (6th Cir. 2013).

In this appeal, Jackson and McKenzie argue that they are entitled to immunity from the Plaintiffs' state law claims under Ohio Rev. Code § 2744.03, Ohio's governmental immunity statute. This statute provides immunity to public school officials from "damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function." *Id.* at § 2744.03(A). A public school official is not entitled to governmental immunity, however, if "(a) [t]he employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) [t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (c) [c]ivil liability is expressly imposed upon the employee by a section of the Revised Code." *Id.* at § 2744.03(A)(6). The Plaintiffs contend that Jackson and McKenzie should not be entitled to governmental immunity and that they have pleaded sufficient facts to show that the Defendants acted recklessly.

> As this Court explained in *Shively v. Green Local Sch. Dist. Bd. Of Educ.*:
>
> A plaintiff is not required to affirmatively demonstrate an exception to immunity at the pleading stage because that would require the plaintiff to overcome a motion for summary judgment in his complaint. Instead, a plaintiff is only required to allege a set of facts which, if proven, would plausibly allow him to recover.

579 F. App'x 348, 359 (6th Cir. 2014) (citing *Mohat v. Horvath*, 2013-Ohio-4290, ¶ 29, 2013 WL 5450296 (Ohio Ct. App. 2013)). According to Jackson and McKenzie, the Plaintiffs failed to sufficiently plead facts that show they acted recklessly, which, under Ohio law, is the "conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Anderson v. City of Massillon*, 983 N.E.2d 266, 273 (Ohio 2012). Jackson and McKenzie maintain that they acted reasonably and protest many of the factual allegations made by the Plaintiffs. Therefore, Jackson and McKenzie argue that they are entitled to governmental immunity and that the district court should have granted the Defendants' motion to dismiss for

failure to state a claim.  For the reasons discussed below, we find these arguments unavailing and affirm the district court's judgment.

B.

On appeal, Jackson and McKenzie maintain that the Plaintiffs insufficiently plead facts that show that Taye's suicide was foreseeable, as is required to support the Plaintiffs' wrongful death claim.  At the outset, Jackson and McKenzie vehemently deny that there was any behavior amounting to "bullying" at Carson Elementary, much less student conduct that created a foreseeable risk that Taye would commit suicide.  Specifically, Jackson and McKenzie argue that the Plaintiffs failed to establish that the alleged bullying was pervasive and repetitive enough to warn them of the possibility that Taye was at risk for suicide.  Jackson and McKenzie assert that "bullying" is defined as the "repeated targeting of a student or group of students by an aggressor or group of aggressors for the purpose of intimidation, violence, or harassment," emphasizing that it requires proof of "multiple incidents serving a common, malevolent purpose."  This definition derives from Ohio Rev. Code § 3313.666, Ohio's anti-bullying statute.

This argument is unpersuasive.  The Ohio statute that Jackson and McKenzie invoke defines how "bullying" is used in that statute.  *See* Ohio Rev. Code § 3313.666(A) ("*As used in this section* . . . bullying . . . means . . . ." (emphasis added)).  And that statute does not purport to set the parameters of whether bullying signals a risk of suicide.  *See id.* § 3313.666.  But even if that statute were the conclusive definition of bullying, the Plaintiffs adequately pleaded sufficient facts to satisfy it.  The Plaintiffs alleged that C.J. or P.B. physically attacked Taye on January 9, 2017.  They also claim that on January 24, 2017, P.A. caused the head injury that resulted in Taye collapsing on the floor.  The complaint asserts that the Plaintiffs "believe[ ] that P.A. . . . is C.J. or P. B."  Taking those factual allegations as true, as we must at the motion to dismiss stage, the Plaintiffs adequately pleaded "intentional . . . physical act[s]" by C.J. or P.B. against Taye that occurred "more than once," which "[c]ause[d] . . . physical harm to" Taye and were "sufficiently severe, persistent, or pervasive [such] that [they] create[d] an intimidating, threatening, or abusive educational environment for" Taye.  *See* Ohio Rev. Code § 3313.666(A)(2)(a).

Additionally, Jackson and McKenzie argue that the Plaintiffs failed to adequately allege that Taye was bullied because the Plaintiffs repeatedly characterized conduct as "aggressive behavior," which is not interchangeable with "bullying." This argument is unavailing. When evaluating a complaint's allegations, substance matters more than labels. *See Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001). And, as our recitation earlier in this opinion demonstrates, the complaint is replete with facially plausible factual allegations of Taye being physically attacked at school over the course of multiple years.

C.

Jackson and McKenzie also argue that, because their behavior was reasonable, their alleged failure to properly report bullying incidents to the state does not constitute reckless behavior. Further, Jackson and McKenzie assert that the Plaintiffs fail to make any connection between their failure to report bullying incidents to the state and Taye's parents' decision to keep him in school at Carson Elementary. For support, Jackson and McKenzie primarily rely on *O'Toole v. Denihan*, 889 N.E.2d 505 (Ohio 2008).

In *O'Toole*, the appellee, George-Munro, an intake supervisor for the local Department of Children and Family Services, was tasked with distributing cases to social workers and offering advice on cases when asked. *Id.* at 507–08. Notably, it was not within his duties to follow up on cases beyond the initial intake. *Id.* at 508. During an emergency visit to a daycare in response to a call alleging a child had been abused, Kamesha Duncan, the on-call social worker responding to the case, called George-Munro for advice regarding how to proceed. *Id.* at 508–10. George-Munro did not personally investigate the abused child's home situation, nor did he witness any of the interviews or proceedings during the investigation. *Id.* at 511. Those responsibilities lay with Duncan, who reviewed the situation on-site. *Id.* at 507–08. Ultimately, child protective services chose not to intervene or remove the child from her home, and the child died from abuse. *Id.* at 511–12. As the *O'Toole* Court explained:

> In investigating the matter, George-Munro could act and react based only on the information provided to him by Duncan. Although Duncan may have failed to complete some paperwork[,] . . . given the fact that [a] safety plan was in place, that the home was clean and free of any hazards, that the background check on [the child's mother] came back negative, and that [the child's mother] appeared to

> be cooperating[,] . . . . there is no evidence that George-Munro consciously left Sydney in the home with the knowledge that further injury was a substantial certainty.

*Id.* at 517. The *O'Toole* Court determined that "a violation of various policies does not rise to the level of reckless conduct unless a claimant can establish that the violator acted with a perverse disregard of the risk." *Id.* at 519.

Jackson and McKenzie assert that their failures amount to those George-Munro made in *O'Toole*—potential failures to properly report information, but ultimately nothing more than negligent mistakes resulting in an utter tragedy. Unlike George-Munro in *O'Toole*, however, Jackson and McKenzie were the keepers of the information, not the reported-to entity, making them more analogous to Duncan, the social worker who failed to properly investigate and whose recklessness the *O'Toole* Court remanded for further consideration. *Id.* at 520 n.4. Further, in *O'Toole*, there was no evidence that George-Munro or Duncan had actual knowledge that abusive behavior caused the child's harm; instead, their alleged recklessness stemmed from their failure to investigate the child's case thoroughly and properly. In this case, however, the Plaintiffs allege that Jackson and McKenzie were aware of the abusive behavior Taye regularly endured at school and disregarded its significance and the potential risks it posed to Taye's safety. In short, the Plaintiffs allege that Jackson and McKenzie were, in effect, the only entities with full knowledge of the risks to Taye's safety in that they were the only persons privy to the facts regarding each of the attacks Taye suffered through. Further, the Plaintiffs allege that they did nothing to protect Taye from a known risk, which the *O'Toole* Court specifically forbids. *See id.* at 519.

At the heart of their argument, Jackson and McKenzie assert that they appropriately responded to each incident involving Taye, alleging that the Plaintiffs even admit in their amended complaint that "[the Carson] Defendants acted consistent with school policy and intervened by suspending students who harmed Taye and by calling Ms. Reynolds when Taye was injured." This is a gross mischaracterization of the Plaintiffs' factual allegations in the amended complaint. The Plaintiffs provide multiple examples of specific instances in which Jackson and McKenzie *withheld* information regarding Taye's safety and wellbeing as a student at Carson Elementary and *failed* to punish the students that attacked Taye. Although Jackson

and McKenzie assert that they left voicemails with Taye's mother on a few of those occasions, there is nothing in the record that contradicts Reynolds' assertion that she never received the calls or that Jackson and McKenzie failed to call Taye's father, his other emergency contact.[6] Even if Jackson and McKenzie did leave voicemails with Reynolds, simply leaving a voicemail on a few occasions falls egregiously short of an adequate response by the school to ensure Taye's parents knew about the ongoing risks he faced at school. In light of the recurring violent incidents at school involving Taye and the school's duty to ensure students' safety, Jackson and McKenzie's failure to contact Taye's parents about those incidents reflects their disregard for Taye's safety.

Further, Jackson and McKenzie assert that the Plaintiffs' expectations of how Jackson and McKenzie should have responded to the events of January 24, 2017, are wholly unreasonable and, instead, that Jackson and McKenzie behaved appropriately in response to the information they possessed. Jackson and McKenzie argue that the Plaintiffs and the district court failed to explain how Jackson and McKenzie's representation that Taye fainted on January 24, 2017, was an "affirmative misrepresentation" based on the facts they had available to them at the time of Taye's injuries. This argument is meritless and misconstrues the factual allegations in the Plaintiffs' complaint. When Jackson and McKenzie informed Taye's mother that Taye had "fainted" or "passed out" at school, they affirmatively misrepresented the events of January 24, 2017 because, as they consistently state in their brief, Jackson and McKenzie *did not know* what had actually happened to Taye. Instead of informing Taye's mother that they were unsure what happened to Taye and that they found him lying on the bathroom floor unconscious, Jackson and McKenzie confidently informed her that Taye had merely fainted. Jackson and McKenzie admit that prior to contacting Reynolds they "were notified that a student *had been hurt* in the bathroom and '*passed out*' there." Thus, by their own admission, Jackson and McKenzie had reason to believe that Taye was injured or harmed by another student, especially in light of the history of students attacking Taye at school. Not only did Jackson and McKenzie misrepresent the events, they also seemingly made no effort to investigate how Taye was

---

[6]Additionally, the Plaintiffs allege that when Reynolds did receive a call or voicemail from the school, she was consistently denied additional information regarding what happened to her son.

knocked unconscious during the hour between the attack and their phone call to Taye's mother. Although Jackson and McKenzie had access to surveillance footage of the incident, they chose not to watch it before telling Taye's mother that he simply fainted and required no additional medical attention.

Additionally, Jackson and McKenzie fail to explain why they declined to call 911 upon witnessing Taye's unconscious state for more than three minutes. Video footage of the incident shows McKenzie arriving in the bathroom to find Taye unconscious on the floor. McKenzie then stands over Taye, doing nothing to assist him, for roughly two minutes until the school nurse arrives. Neither the school nurse nor McKenzie called 911, despite a school policy requiring the school to seek emergency medical attention when a student is unconscious for more than one minute. That policy placed Jackson and McKenzie on notice of the inherent danger associated with loss of consciousness for even *one* minute—much less the seven minutes Taye was unconscious—yet they disregarded that known risk, instead choosing to minimize what happened. Not only did Jackson and McKenzie fail to follow school policy, they also ignored the risk that Taye could develop delayed symptoms of a concussion or head trauma. Without accurate information regarding the attack and Taye's injuries, Reynolds was in fact unable to ensure her son was evaluated for head trauma when she took him to the hospital that night. As alleged, Jackson and McKenzie's failure to provide Reynolds with accurate information along with their failure to follow their own school policy constitutes recklessness because they ignored known risks that their actions posed to Taye's health and safety.

Further, Jackson and McKenzie did not inform the school's teachers of the January 24th incident or attempt to supervise the students' behavior in the boys' bathroom following the incident. This is hardly reasonable behavior for school administrators, particularly those tasked with overseeing young, elementary school children. The fact that multiple students were attacked put Jackson and McKenzie on notice that leaving the bathroom unsupervised put students at risk of being attacked again. Jackson and McKenzie did not email teachers about the incident nor did they hold a faculty meeting to discuss the incident. In fact, they failed to do *anything* to put teachers on notice that a violent attack on multiple students had occurred in the boys' bathroom. Nor did Jackson and McKenzie make any attempt to prevent future incidents.

They could have asked teachers to supervise the student bathrooms or limited the number of students allowed to use the bathroom at one time. Instead, Jackson and McKenzie allowed the boys' bathroom to remain unsupervised. Jackson and McKenzie's behavior shows their failure to take this situation seriously and exemplifies the very definition of recklessness: they consciously disregarded the "known or obvious risk of harm" that students would engage in violent behavior in the unsupervised bathroom, and that disregard was "unreasonable" in light of the attack that took place there. *Anderson*, 983 N.E.2d at 273. As a result, Taye was again harassed in the boys' bathroom on the day he took his life. Further, the school's failure to inform teachers about the January 24th incident involving Taye rendered his teachers unable to understand the significance of the harassment Taye again experienced in the bathroom upon returning to school. Jackson and McKenzie's overall response to the January 24th attack shows their indifference to Taye's wellbeing and utter failure to protect students against known risks and thus, displays recklessness.

D.

Despite their knowledge of the continued harassment and physical harm Taye suffered at school, Jackson and McKenzie maintain that Taye's suicide was not a foreseeable risk. As this Court explained in *Tumminello v. Father Ryan High Sch., Inc.*, however, "if a school is aware of a student being bullied but does nothing to prevent the bullying, it is reasonably foreseeable that the victim of the bullying might resort to self-harm, even suicide." 678 F. App'x 281, 288 (6th Cir. 2017). In *Tumminello*, the appellee, Patricia Lauren Tumminello, argued that Father Ryan High School administrators' failure to enforce the school's anti-bullying policy led to her son Tate's suicide. *Id.* We held that Tumminello failed to allege that her son's suicide was a reasonably foreseeable risk because her complaint did not allege facts showing that the school was aware of the "abuse and harassment" he experienced at school leading up to his death. *Id.* Specifically, this Court noted that the complaint did not include allegations "that any teacher or administrator at Father Ryan saw or heard students bully Tate, that Tumminello or Tate ever complained to a teacher or administrator about the bullying, or that any other student reported the bullying." *Id.*

Unlike the school administrators in *Tumminello*, Jackson and McKenzie knew the full extent to which Taye was subjected to aggression and violence by his classmates. They even had video footage of several of the violent incidents Taye experienced at school. Further, the foreseeability of Taye's suicide in light of the violence and bullying he experienced at Carson Elementary is so apparent that the school administration's own safety guidance warns about the fact that suicide is a risk of bullying. As alleged, Jackson and McKenzie's behavior shows "conscious disregard of or indifference to a known or obvious risk of harm" to Taye that was "unreasonable under the circumstances" because they knew Taye was harassed and bullied at school and that a risk of bullying is suicide, and yet they utterly failed to take reasonable steps to protect Taye from that risk. *Anderson*, 983 N.E.2d at 273.

## III.

The Plaintiffs sufficiently allege facts that show Jackson and McKenzie acted recklessly. Plaintiffs have sufficiently alleged in the amended complaint that Jackson and McKenzie lied to Taye's parents and chose not to inform Taye's parents about six instances in which Taye's physical safety was threatened. They failed to discipline students who attacked Taye at school. They failed to call 911 when Taye was unconscious for seven minutes after being knocked to the floor in the bathroom. They did nothing to put teachers at the school on notice of the violent attack that occurred on January 24th, nor did they take any steps to prevent future attacks of a similar nature. They reported false information about the number of "bullying instances" that occurred as required by Ohio law, and ultimately, prevented Taye's parents from fully understanding Taye's horrifying experience at Carson Elementary until it was too late. This Court finds their behavior, as alleged, to be egregious and clearly reckless, thus barring them from the shield of government immunity.

For the foregoing reasons, we AFFIRM the district court's denial of Jackson and McKenzie's motion to dismiss, holding that they are not entitled to immunity under Ohio Rev. Code § 2744.03(A)(6)(b).